IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WALTER MERCADO-SALINAS, et al.,

    Plaintiffs,

v.

BART ENTERPRISES INTERNATIONAL, LTD., et al.,

    Defendants.

CIVIL NO. 09-1509 (GAG/BJM)

## REPORT AND RECOMMENDATION

Before the court is a motion by defendants ("defendants" or "Bart Group") to enforce a settlement agreement allegedly executed by defendants and plaintiffs Walter Mercado-Salinas ("Mercado") and Astromundo, Inc. ("Astromundo") (collectively, "plaintiffs" or "Mercado parties"). (Docket No. 160). Plaintiffs oppose the motion. (Docket No. 161). The matter was referred to me by the presiding district judge for a report and recommendation. (Docket No. 164). For the reasons that follow, I recommend that the motion be **denied**.

### FACTUAL AND PROCEDURAL BACKGROUND

The alleged settlement agreement at issue, if valid, would conclude long and contentious litigation in both this case and related litigation in the Southern District of Florida.[1] Both the Florida litigation and the instant action arise from alleged breaches of a contract (the "1995 Agreement") between plaintiff Mercado and defendant Bart Enterprises. (See Docket No. 7-5, p. 8-35). After several months of settlement negotiations, representatives for the parties met in Miami on May 10, 2010, in anticipation of the deposition of defendant Guillermo Bakula, the corporate defendants'

---

[1] Southern District of Florida civil case No. 07-20136-CIV-SEITZ. The case involves substantially the same parties; plaintiffs in this case are defendants in that action, and defendants here (except Arcane) are plaintiffs there. Allegedly, an appeal from the district court case is currently pending in the Eleventh Circuit. (Docket No. 160-1, p. 1).

**Walter Mercado-Salinas, et al. v. Bart Enterprises International, Ltd., et al.**  Page 2
Civ. No. 09-1509 (GAG/BJM)
REPORT AND RECOMMENDATION

principal. (Docket No. 160, ¶¶ 1-3). The details of the meeting are less than pellucid.

According to defendants, present on the morning of May 10 were counsel for plaintiffs, Carlos Velásquez and María Bertolez-Elvira ("Bertolez"), counsel for defendants, Scott Orth, and a "settlement adviser" to the Bart Group, Michael Feldenkrais. (Id., ¶ 3). Plaintiffs agree that Bertolez and Velásquez attended, but contend that only Feldenkrais, not Orth, was present on the morning of May 10. Plaintiffs state that Orth did participate otherwise in settlement discussions on May 10 (*i.e.*, during the afternoon meeting) and 11.[2] (Docket No. 161, ¶¶ 7, 8). Plaintiff Mercado was not present; it is not clear whether defendant Bakula was. (Docket No. 160, ¶¶ 3, 5; Docket No. 161, ¶ 8).

Neither defendants' motion nor plaintiffs' opposition states whether the parties' representatives had full settlement authority for their respective clients when they met. According to plaintiffs, Feldenkrais denied that either Orth or defendants' other counsel, Laura Beléndez-Ferrero ("Beléndez"), was authorized to settle. (Docket No. 161, ¶ 7).[3] Plaintiffs do not state whether Velásquez and/or Bertolez had settlement authority for plaintiffs.

The parties both brought copies of a draft settlement agreement, then in its eleventh version ("version 11"), to the May 10 morning meeting, where they engaged in further settlement discussions. Defendants identified one correction to a clerical error in the draft, which plaintiffs accepted. (Docket No. 160, ¶¶ 4-5). Plaintiffs then requested seven changes and additions, which defendants characterize as "relatively minor," to which Orth agreed after discussion with Bakula. Defendants characterize this exchange as a counter-offer and acceptance. (Id., ¶ 5). Defendants assert that version 11, together with the total of eight changes, "was the definite and fully understood

---

[2] The court notes that Orth signed defendants' motion asserting Orth's presence, and Bertolez signed plaintiffs' response denying he was present, but will take no further action at this time to resolve the conflicting assertions. See Fed. R. Civ. P. 11(b)(3)-(4), (c)(1) & (3).

[3] In an e-mail to Bertolez on May 16, 2010, Feldenkrais asserted he had sole authority for settlement. (Docket No. 161-3, p. 1). None of plaintiffs' or defendants' exhibits has been authenticated, but because neither party challenges the other's exhibits, the court will consider the exhibits.

**Walter Mercado-Salinas, et al. v. Bart Enterprises International, Ltd., et al.**    Page 3
**Civ. No. 09-1509 (GAG/BJM)**
**REPORT AND RECOMMENDATION**

settlement and was the agreement of the Parties as confirmed by their counsel of record." (Id.).

According to defendants, "with the understanding that the foregoing changes would be added to the written settlement agreement, it was announced, out loud, that a settlement was reached," the Bakula deposition was cancelled, and everyone present "shook hands and congratulated each other on reaching a mutually agreeable resolution" of both the instant and the Florida cases. (Id., ¶ 6).

After a break for lunch, the parties met at Orth's office, allegedly to make the needed changes. Around 6:00 p.m., the meeting ended and Feldenkrais circulated by e-mail the latest draft ("version 13"), which was missing two terms that had been agreed to verbally, as Bertolez identified in an e-mail later the same evening.[4] (Id., ¶ 7; see also Docket No. 160-3). Those two provisions "were later worked out," though it is unclear who drafted them or when. (Docket No. 160, ¶ 7). "With the addition of [Bertolez's] email" and of the parties' mailing addresses in the "Notices" section of the agreement, defendants allege that "the settlement was complete." (Id., ¶ 7). Beléendez notified the court in a motion dated May 11, but apparently filed on the night of May 10, that "a settlement has been reached in principle and the parties are actively engaged in . . . ongoing settlement negotiations." (Docket Nos. 156, p. 1-2; 160-6).

Defendants allege that on May 11 the parties met at Feldenkrais's office to review the document and add the indemnification and cancellation provisions. The "Notices" section was allegedly drafted that day.[5] (Docket No. 160, ¶¶ 10-11). According to defendants, prior to the May 11 meeting, defendants' counsel sent an e-mail noting a typographical error and asking that one phrase in the draft be changed from "Mediation Offer" to "Tender." At the meeting, defendants allege that counsel for Mercado asked that the parties start reviewing the document from the

---

[4] The provisions were (1) for the indemnification of plaintiffs by the Bart Group and (2) for cancellation of the settlement agreement in the event of Bakula's or Mercado's conviction for a criminal offense. (Docket Nos. 160, ¶ 7; 160-2; 160-5).

[5] Again, it is unclear who drafted it or whether the drafting took place during the meeting at Feldenkrais's office.

**Walter Mercado-Salinas, et al. v. Bart Enterprises International, Ltd., et al.**  Page 4
Civ. No. 09-1509 (GAG/BJM)
REPORT AND RECOMMENDATION

beginning. The review process then broke down, as the parties made enough changes to the draft that it no longer resembled the previous evening's version. (Docket No. 160, ¶ 12).

Unsurprisingly, plaintiffs dispute defendants' characterization of the negotiations and their effect. Plaintiffs contend that "neither Plaintiffs themselves nor their attorneys at any time – before or after [Monday,] May 10, 2010 – represented that the drafts were agreeable and a complete and final settlement agreement of the case." (Docket No. 161, ¶ 5). Plaintiffs contend that the deposition was cancelled mid-Monday in anticipation of, not consequent to, reaching a final agreement. According to plaintiffs, "the parties reached a final verbal agreement as to the economic terms" of settlement and "seemed to come to an agreement" as to "critical" issues concerning the "licens[ing]" of intellectual property rights, but on Monday afternoon, a dispute arose regarding the "extremely important," "essential" provisions concerning the terms, conditions, and effects of early termination of the settlement agreement. Thus the parties agreed on Monday to continue negotiating on Tuesday, May 11. Late in the afternoon of May 11, Feldenkrais circulated another draft ("version 14") by e-mail, commenting, "Please review carefully[;] we may have only one draft version after this and let[']s get it done." According to plaintiffs, the May 11 meeting and draft, among other evidence, show that May 10's version 13 is just a preliminary, incomplete draft that was unapproved by either Mercado or his counsel. (Id., ¶¶ 6, 8; Docket No. 161-1).

The parties continued to exchange drafts after May 10 without, according to plaintiffs, ever reaching a final agreement. Defendants circulated drafts on May 11 (version 14) and May 14 ("version 15") that plaintiffs characterize as "substantially different" from version 13, and plaintiffs circulated another draft on May 24. (Docket No. 161, ¶¶ 4, 5, 8; see also Docket Nos. 161-1, 161-2, 161-3, 161-4). On May 21, defendants filed another motion stating repeatedly that "settlement negotiations are still on-going." (Docket No. 158, p. 2). Plaintiffs allege that Feldenkrais called Bertolez on May 26 to schedule a conference call to discuss the latest draft. He then e-mailed her on the evening of the following day (after the filing of the instant motion), requesting she call him to "finish" the settlement matter. (Docket Nos. 161, ¶ 6; 161-4, p. 23).

Defendants filed the instant motion on May 27, 2010. (Docket No. 160). According to defendants, Mercado refuses to sign the purported settlement agreement, but defendants assert that "the Bart Group is prepared to sign and stands by to live up to its agreement." Defendants ask that the court enforce the settlement agreement "[a]s the parties reached a definite and clear expression of a settlement on May 10, 2010." (Docket No. 160, ¶ 13-14). Defendants allege that both parties relied on the alleged settlement by cancelling Bakula's deposition and that defendants also relied thereon by filing Docket No. 156. (Id., ¶¶ 9, 18).

Exactly what comprises the settlement agreement, according to defendants, is the combination of: (1) version 13, which allegedly reduced to writing defendants' offer (of version 11 plus defendants' one requested change), plaintiffs' counter-offer (seven requested changes), and defendants' acceptance (of those seven changes); (2) the indemnification and cancellation provisions (which allegedly were orally agreed upon and reduced to writing after their inadvertent omission from version 13); and (3) the Notices section (also left out of version 13). (Docket No. 160, ¶ 18).

**DISCUSSION**

At the outset, the court notes it has jurisdiction to enforce a private settlement agreement even where, as here, the parties have not jointly stipulated to settlement and dismissal. "A party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges. If . . . the settlement collapses before the original suit is dismissed, the party who seeks to keep the settlement intact may file a motion for enforcement." Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999) (citations omitted); Caraballo Cordero v. Banco Financiero de P.R., 208 F. Supp. 2d 185, 188 (D.P.R. 2002). The district court determines the motion in accordance with federal law, at least where the underlying cause of action is federal in nature. Malave, 170 F.3d at 220 (citations omitted). However, where the underlying case involves both federal and state causes of action and the purported settlement "took place through communications outside the context of" the court proceedings, the court may err on the side of caution and apply local law. Caraballo Cordero, 208 F. Supp. 2d at 189 (applying Puerto Rican contract law).

**Walter Mercado-Salinas, et al. v. Bart Enterprises International, Ltd., et al.**  Page 6
Civ. No. 09-1509 (GAG/BJM)
REPORT AND RECOMMENDATION

     Defendants have given the court their account of the May 10 and 11 settlement meetings between the parties, which they claim produced a binding final agreement. Plaintiffs respond that the agreement defendants seek to enforce was merely a draft they accorded no final status and that negotiations continued well after the two days when the parties met. Numerous reasons guide the court to the conclusion that the alleged agreement was not final and should not be enforced.

**A.    Authority to Settle**

     Defendants cite Quint v. A.E. Stanley Mfg. Co., 246 F.3d 11 (1st Cir. 2001), *cert. denied*, 535 U.S. 1023 (2002), to support their argument that the court may enforce a settlement "based upon the verbal assent of the parties' counsel, even if the agreement contemplated a writing, where one party later refuses to sign the writing." (Docket No. 160, ¶ 15). The court finds this proposition incomplete, as counsel must have actual client authority to settle for the agreement to be binding. Michaud v. Michaud, 932 F.2d 77, 80 (1st Cir. 1991) ("an attorney may make a binding compromise on behalf of his client if the client has authorized him to do so.") (citation omitted). "While there is a presumption that a settlement entered into by an attorney has been authorized by the attorney's client, rebuttal of the presumption renders any purported settlement ineffective." Id. (citation omitted). Here it is not clear that the parties' representatives were authorized to settle.

     Defendants state that "[b]oth sides were represented by able counsel" and that Feldenkrais, the Bart Group's "settlement adviser," was an "attorney." (Docket No. 160, ¶¶ 3, 18). However, plaintiff has rebutted the presumption with regard to defendants' counsel Orth (assuming he attended), and Feldenkrais is not defendants' counsel of record, making it doubtful whether the presumption of authorization applies to him.[6] (Docket No. 161, ¶ 7; Docket No. 161-3, p. 5). Furthermore, while plaintiffs never clearly state that their counsel lacked settlement authority, their

---

    [6] "[A]lthough an attorney has no authority to compromise the lawsuits of a client, every reasonable presumption must be indulged in favor of a settlement made by an attorney *duly employed*" (emphasis added). Eunice A. Eichelberger, Annotation, Ratification of Attorney's Unauthorized Compromise of Action, 5 A.L.R. 5th 56 (1992) (citing Dunlap v. Villareal, 91 S.W.2d 1124 (Tex. Civ. App. 1936)).

Case 3:09-cv-01509-GAG-BJM   Document 188   Filed 08/12/10   Page 7 of 11

Walter Mercado-Salinas, et al. v. Bart Enterprises International, Ltd., et al.  
Civ. No. 09-1509 (GAG/BJM)  
REPORT AND RECOMMENDATION

Page 7

emphasis that version 11 was not "approved by Plaintiffs' counsel nor his client" and their contention that "the parties (not the attorneys) [must] reach an agreement" suggests that plaintiffs' counsel did *not* have full settlement authority on May 10. (Docket No. 161, ¶¶ 8, 9). Even if this is insufficient to rebut the presumption of authorization, plaintiffs vigorously deny that their counsel entered into a final agreement – thus rendering the presumption irrelevant.

In short, the open questions surrounding the parties' representatives' authorization to settle during the May 10 meeting – including such basic facts as who was in the room – are sufficient alone to preclude enforcement. See Malave, 170 F.3d at 221 ("Since actual authority is the barometer and the evidence before the district court did not compel a conclusion that [plaintiff's counsel] possessed actual authority to conclude a settlement, the [defendant's] motion for summary enforcement could not be granted.") (citing Millner v. Norfolk & W. Ry. Co., 643 F.2d 1005, 1009-10 (4th Cir. 1981) (existence of dispute over attorney's settlement authority rendered enforcement inappropriate)).

**B.    Effect of Alleged Oral Statement That Parties Had Settled**

Even assuming Bertolez, Velasquez, and Feldenkrais (and Orth) all had their clients' full authorization to settle on May 10, Quint is inapposite in light of the facts here, as it concerned an oral settlement agreement wherein the parties stated the core elements of the agreement out loud, confirmed out loud that they had settled, and then agreed to memorialize the oral agreement in writing later. Quint, 246 F.3d at 13. The First Circuit found the agreement enforceable because the parties orally agreed as to all material terms of settlement. Id. at 15.

Here, defendants point to the parties' alleged "announce[ment] in front of [each] other, and to the Court, that an agreement was reached."[7] (Docket No. 160, ¶ 18). But the parties' telling each other "we have settled" – an announcement plaintiffs say did not even occur – says nothing about

---

[7] As plaintiffs note, the parties made no such announcement to the court: defendants' motions consistently state that "a settlement has been reached *in principle*" (emphasis added) and that settlement discussions were ongoing. The court finds it particularly telling that defendants informed the court that negotiations were still underway on May 21, eleven days after the parties allegedly reached a final agreement. (Docket Nos. 156, p. 1; 158, p. 2).

**Walter Mercado-Salinas, et al. v. Bart Enterprises International, Ltd., et al.**  Page 8
Civ. No. 09-1509 (GAG/BJM)
**REPORT AND RECOMMENDATION**

what the material terms were (*i.e.*, that there was a meeting of the minds, see infra). The only terms that apparently were stated aloud were the eight changes in total that defendants and plaintiffs requested of each other, which defendants themselves paint as minor, not material. Moreover, rather than agreeing to a later reduction to writing, as in Quint, here the parties had version 11 in front of them. Therefore, I find that the parties' oral statements that they had settled are not enough to warrant the enforcement defendants' request.

**C.    Existence and Material Terms of Agreement**

"As a general rule, a trial court may not summarily enforce a purported settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement. In such circumstances, the cases [consistently] hold that the court instead must take evidence to resolve the contested issues of fact." Malave, 170 F.3d at 220 (citations omitted). In the instant case, genuine material fact questions exist as to both existence and terms.

When defendants filed their motion to enforce, they tendered unsigned copies of versions 11 and 13, as well as e-mails between the parties' representatives regarding version 13 and the status of the negotiations, plus documents purporting to recite the provisions left out of versions 11 and 13. (Docket No. 160). "There is no way that these materials, standing alone, would justify summarily enforcing a settlement agreement. Evidence supplied by one side to the dispute . . . ordinarily will not suffice to ground enforcement of an ostensible settlement." Malave, 170 F.3d at 220 (citations omitted).

Under Puerto Rico law, a contract comes into existence when: 1) the contracting parties consent; 2) there is a definite object which may be the subject of the contract; and 3) there is cause for the obligation. 31 L.P.R.A. § 3391. The Civil Code defines a settlement contract in particular as a special "contract of compromise," by which in "each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted." 31 LP.R.A. § 4821. Such a contract is established when 1) the parties consent; 2) the object of the contract is the controversy between the parties; and 3) the cause for the

contract consists of the elimination of the controversy through reciprocal concessions.  Caraballo Cordero, 208 F. Supp. 2d at 189 (citation omitted).  Consent is manifested through the concurrence of an offer and an acceptance of the object and the cause which are to constitute the contract.  Id. (citing 31 L.P.R.A. § 3401).

It is clear from the parties' pleadings that the object of the purported settlement agreement was the termination of this case and the Florida litigation, and that the "reciprocal concessions" included "economic terms," terms concerning intellectual property rights, and the indemnification and cancellation clauses.  However, the first requisite element, the parties' consent to enter into a final agreement, has not been sufficiently established.  Defendants' motion first states that the final, confirmed agreement was made mid-day May 10, comprising version 11 plus the eight verbally agreed-upon changes.  Defendants later claim that the settlement was complete on the evening of May 10, comprising version 13 (which incorporated six of the changes) plus the two remaining provisions and the Notices section, even though those three items were drafted "later," on May 11. (Docket No. 160, ¶¶ 5, 7, 8, 10).

Defendants' conduct subsequent to May 10 undermines their assertion that the agreement was finalized that day.  On May 11, defendants participated in a "total re-write," then continued to exchange drafts with plaintiffs for two more weeks.  Defendants represented to the court on May 11 and 21 that the negotiations were "ongoing". (Id., ¶ 12; Docket No. 158).  The e-mail exchanges between the parties' counsel between May 10 and the day the instant motion was filed likewise paint a picture of parties still in the process of negotiating while consulting with their clients on the agreement's language and terms. (See Docket Nos. 160-3, 160-6, 161-1, 161-2, 161-3, 161-4; 172).  This drawn-out sequence does not demonstrate that on May 10, the parties had a meeting of the minds about the agreement's terms and consented to a final agreement.  In these circumstances, to point to mid-day May 10 as the point where consent occurred appears little more than arbitrary.

Importantly, plaintiffs assert that on the afternoon of Monday, May 10, a dispute arose between the parties' counsel about the early termination provisions of the settlement agreement.

Case 3:09-cv-01509-GAG-BJM   Document 188   Filed 08/12/10   Page 10 of 11

Walter Mercado-Salinas, et al. v. Bart Enterprises International, Ltd., et al.         Page 10
Civ. No. 09-1509 (GAG/BJM)
REPORT AND RECOMMENDATION

Plaintiffs stress that the termination provisions were very important to them and that the dispute about them had not yet been resolved by the time defendants filed the instant motion. (Docket No. 161, ¶¶ 6, 8). Absent mutual assent to all material terms, there can be no contract. See Quint, 246 F.3d at 15. The court thus should not enforce an agreement from May 10 that did not include agreed-upon language about a material term.

Neither party has requested an evidentiary hearing, nor is such a hearing necessary; the evidence before the court is sufficient to satisfy the undersigned that there was no final, binding agreement, either on May 10 or thereafter. Therefore, the motion to enforce should not be granted.

**D.     Detrimental Reliance**

Finally, the court finds unconvincing defendants' claim, apparently on an estoppel theory, that the agreement should be enforced because they relied on it by cancelling Bakula's deposition and filing a motion for extension of time to oppose one of plaintiffs' motions. Defendants point to no way in which their reliance has worked to their detriment, even assuming such reliance was reasonable (which, given the facts here, is doubtful). The parties are free to reschedule the deposition, and the court granted both of defendants' two motions for extensions of time – both of which stated clearly that settlement negotiations were ongoing, not finished – so defendants have hardly been prejudiced by their "reliance." (Docket Nos. 156, 157, 158, 159).

In summary, defendants have not shown the existence of a final, enforceable settlement agreement. They have not shown that there was a meeting of the minds between the parties regarding the material terms of the agreement, nor even that the parties' representatives were authorized to settle when they allegedly did so. I conclude that enforcement is not appropriate in these circumstances.

## CONCLUSION

For the reasons described above, I recommend that defendants' motion to enforce the alleged settlement agreement be **DENIED**.

**Walter Mercado-Salinas, et al. v. Bart Enterprises International, Ltd., et al.** Page 11
**Civ. No. 09-1509 (GAG/BJM)**
**REPORT AND RECOMMENDATION**

The parties have fourteen (14) days to file any objections to this report and recommendation. Local R. 72(d); see also 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

**IT IS SO RECOMMENDED.**

At San Juan, Puerto Rico, this 12th day of August, 2010.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge