IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WALTER MERCADO-SALINAS, et al.,

     Plaintiffs,

     v.

BART ENTERPRISES
INTERNATIONAL, LTD., et al.,

     Defendants.

CIVIL NO. 09-1509 (GAG/BJM)

## REPORT AND RECOMMENDATION

     This case is another chapter in the seemingly endless dispute between the parties over rights to market and exploit the name, image, personae, and work product of television psychic Walter Mercado.   Plaintiffs include Walter Mercado-Salinas ("Mercado") and Astromundo, Inc. ("Astromundo") (collectively, "plaintiffs" or "Mercado Parties").   Defendants include Bart Enterprises International, Ltd. ("Bart"), Walter International Productions, Inc. ("International Productions"), Watervision, Inc. ("Watervision"), Waltervision Productions, Inc. ("Waltervision"), Walter Mercado Radio Productions, Inc. ("Radio Productions"), Walter Mercado Enterprises Corp. ("Walter Enterprises"), Arcane Creative, LLC ("Arcane"), and Guillermo Bakula ("Bakula") (collectively, "defendants," "Bart Group," or "Bart Parties").

     Presently before the court are cross-motions for a preliminary injunction (Docket No. 74, 126), and the parties' various briefs in support or opposition (82, 87, 106, 109, 114, 120, 126, 136, 137, 142, 143, 154).   In lieu of an evidentiary hearing, the parties have filed a stipulation of facts supported by exhibits. (Docket No. 133, 134).[1]   The requests for preliminary injunction and related matters were referred to me for a report and recommendation by the presiding district judge. (Docket

---

[1] The parties agreed that "the pending motions for preliminary injunction can be decided based on the parties' stipulations, briefs, and evidence on file, unless the court determines that the contract at issue is ambiguous." (Docket No. 171).  Because I conclude, as discussed *infra* that the Agreement is not ambiguous, there is no need for an evidentiary hearing at this time.

**Walter Mercado-Salinas, et al. v. Bart Enterprises International, Ltd., et al.**      Page 2
**Civil No. 09-1509 (GAG/BJM)**
**REPORT AND RECOMMENDATION**

No. 75, 83, 128).  For the reasons set forth below, I recommend that plaintiffs' motion be **granted in part** and **denied in part**.  I further recommend that defendants' motion be **denied**.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.      Procedural History**

This case is preceded by two consolidated cases that went to trial in the Southern District of Florida (the "Florida litigation").  (Docket No. 44-2, p. 1, n.1).  Both the Florida litigation and the instant action arise from alleged breaches of a contract (the "Agreement" or "1995 Agreement") between plaintiff Mercado and defendant Bart Enterprises.  The Agreement included, *inter alia*, an alleged assignment by Mercado to Bart of the rights to the common-law trademark "Walter Mercado" (hereinafter the "Mark") arising from certain materials featuring Mercado, the Mark, and Mercado's name and likeness.  The Agreement provided for monetary compensation for Mercado's services.

Importantly, the court in the Florida litigation determined that the Agreement contains two different terms: (1) the term for which Mercado was obligated to provide services to Bart (the "Additional Services Term"), consisting of ten years plus optional two-year extensions, and (2) the term applicable to the assignment of the Mark and other rights (the "Term"), which is in perpetuity or until termination of the Agreement.  (Docket No. 133-23, p. 7).  In the January 2009 trial in the Florida litigation, the jury found, in relevant part, that based on evidence presented "showing that money was not owed to Mercado at the time of the attempted termination [in November 2006]," the Bart Parties had not failed to pay compensation owing and thus had not breached the Agreement. (Docket No. 44-2, p. 5, 10).  The jury further found that Mercado *had* breached the Agreement by, among other actions, improperly terminating it and failing to perform after November 9, 2006.[2]  (Id.). The Florida court denied the Mercado Parties' renewed motion for judgment as a matter of law on

---

[2] The parties have stipulated, see infra, that Mercado did provide to Bart recordings for the show "Primer Impacto" up to August 2007.

these points.  (Id., p. 10).  Subsequently, the Florida court found that it lacked jurisdiction over the issue of ownership of the Mark.  The Florida court explained that because the Agreement provides that the trademark rights assigned in the Agreement revert to Mercado only upon valid termination of the Agreement, and the jury had found there was no valid termination, "no event had occurred that would cause the trademark rights to revert to Mercado."  (Docket No. 49-2, p. 22).

In the instant action, plaintiffs allege that defendants have failed to pay fees due under the Agreement since November 6, 2006, that plaintiffs demanded payment, and that defendants' continued refusal to pay breached the Agreement and rendered the contract null and void as of April 4, 2009, thereby causing any of defendants' rights assigned under the Agreement to revert back to Mercado.  (Docket No. 1-4, ¶¶ 47, 56-59).  Plaintiffs allege that Mercado validly terminated the Agreement in a May 15, 2009, letter to defendants.  (Id., ¶ 58).  Plaintiffs maintain that defendants owe these payments because the Agreement obligates defendants to continue paying monthly fees for the rights assigned in perpetuity, even though Mercado's own obligation under the Agreement to help create new materials has ceased.  (Id., ¶ 48).  Plaintiffs' current position is that Mercado's obligation ended in June 2007 pursuant to the Agreement's provision for a two-year extension of the ten-year term for his services.  (Docket No. 137, p. 2, 6, 9, 10; 142, p. 4, 6, 7, 8).

Plaintiffs further allege that the rights granted to defendants under the Agreement is limited to the right to use the name and image of "Walter Mercado" in relation to materials produced with his participation and services and in relation to his astrological and psychic services, and that even if the Agreement has not been validly terminated, plaintiffs retain all such rights to his name, image, and mark, and defendants should be prohibited from utilizing the Walter Mercado name, mark, and image for astrological or psychic services that he did not produce, supervise, control, or approve. (Docket No. 1-4, ¶¶78-80).

Plaintiffs, therefore, seek injunctive relief against defendants to prevent them from using the Mark or Mercado's name, likeness, or other indicia of identity.  For their part, in connection with their counterclaims against plaintiffs for trademark infringement and declaratory relief, defendants

seek to enjoin plaintiffs from exploiting the Walter Mercado-related trademarks or representing to third parties that they own the marks.

## B.   The Stipulated Facts

In connection with their cross-requests for preliminary injunction, the parties have submitted the following factual stipulations:

1.   Mr. Walter Mercado is a well known astrologer and psychic in Puerto Rico, the United States, and Latin America.

2.   Mr. Walter Mercado has worked for almost forty years as a psychic and astrologist.

3.   Astromundo, Inc., is a for profit corporation, organized under the laws of the Commonwealth of Puerto Rico.

4.   Walter International Productions, Inc. is a for profit corporation organized in the state of Florida, with its principal place of business in Miami, Florida.

5.   Watervision, Inc. is a for profit corporation organized in the state of Florida, with its principal place of business in Miami, Florida.

6.   Walter Mercado Radio Productions Inc. is a for profit corporation with its principal place of business in Miami, Florida.

7.   Arcane Creative LLC is a limited liability company organized in the state of Florida with its principal place of business in Miami, Florida.

8.   Walter Mercado Enterprises Corp. is a for profit corporation with its principal place of business in Miami, Florida.

9.   On October 22, 1992, Mercado executed a Television Production Agreement with Jamie Shoop & Associates, Inc. <u>See</u> **Exhibit 1.**[3] The authenticity of the Agreement only is hereby stipulated, not its relevance, admissibility, or probative value.

10.   On June 30, 1993, Mercado executed a Television Production Agreement with Jamie Shoop & Associates, Inc.  <u>See</u> **Exhibit 2**.  The authenticity of the Agreement only is hereby stipulated, not its relevance, admissibility, or probative value.

11.   On July 26, 1994, Mercado executed an agreement with Jamie Shoop & Associates, Inc.  <u>See</u> **Exhibit 3**.  The authenticity of the Agreement only is hereby stipulated, not its relevance, admissibility, or probative value.

12.   On August 4, 1995, Mr. Walter Mercado and Bart Enterprises International Ltd entered into an Agreement ("the 1995 Agreement").

---

[3] The exhibit numbers refer to exhibits attached to the parties' joint stipulation of facts. (Docket Nos. 133, 134).

Walter Mercado-Salinas, et al. v. Bart Enterprises International, Ltd., et al.                Page 5
Civil No. 09-1509 (GAG/BJM)
REPORT AND RECOMMENDATION

13.     The authenticity of the August 1995 Agreement, **Exhibit 4,** is stipulated.

14.     Guillermo Bakula is an owner and/or director/manager of Bart Enterprises International Ltd., Walter International Productions Inc., Watervision, Inc., Walter Mercado Radio Productions Inc., Arcane Creative LLC, and Walter Mercado Enterprises Corp.

15.     On January 17, 2007, Walter International Productions, Inc., Watervision, Inc., Waltervision Productions, Inc., Walter Mercado Radio Productions, Inc., Bart Enterprises International, LTD, and Walter Mercado Enterprises Corp. filed a Complaint (**Exhibit 5**) against Walter Mercado before the United States District Court for the Southern District of Florida, case number 07-20136 CIV.

16.     The fact that the allegations contained in the Complaint (**Exhibit 5**) were asserted in said Complaint by Walter International Productions, Inc., Watervision, Inc., Waltervision Productions, Inc., Walter Mercado Radio Productions, Inc., Bart International, LTD, and Walter Mercado Enterprises Corp. is stipulated, not be veracity of the allegations.

17.     On February 8, 2007, Walter Mercado and Astromundo Inc. filed a Complaint in the United States District Court of Puerto Rico, Case Number 07-1113 (**Exhibit 6**). The fact that the allegations contained in the Complaint (**Exhibit 6**) were asserted by Walter Mercado is stipulated.

18.     On June 16,  2008 the Complaint filed by Walter Mercado and Astromundo Inc. in the United States District of Puerto Rico was transferred to Florida.

19.     On June 26, 2007, Walter Mercado and Astromundo Inc. filed  an Answer to the Complaint and Counterclaim (**Exhibit 7**). The fact that the allegations contained in the Answer to the Complaint and Counterclaim were asserted therein by Walter Mercado and Astromundo Inc. is stipulated, not the veracity of the allegations.

20.     On   July 27, 2007 , Walter International Productions, Inc., Watervision, Inc., Waltervision  Productions, Inc., Walter Mercado Radio Productions, Inc., Bart Enterprises International, Ltd., and Walter Mercado Enterprises Corp. filed their Answer to the Counterclaim (**Exhibit 8**). The fact that the allegations contained in the Answer to the Counterclaim were asserted therein  by Defendants in this case is stipulated, not the veracity of the allegations.

21.     Between June and August of 2008, the parties briefed motions for summary judgment before the Florida Court. See **Exhibits 9 -18.** The fact that these motions were filed (along with oppositions and replies) is stipulated, not the veracity of the statements made therein.

        a.      Exhibits 9-10- The Mercado Group's Motion for Summary Judgment and Statement of Material Facts (DE 135, 156).[4]

---

[4] The abbreviation "DE" refers to the docket number in the Florida case.

Walter Mercado-Salinas, et al. v. Bart Enterprises International, Ltd., et al.      Page 6
Civil No. 09-1509 (GAG/BJM)
REPORT AND RECOMMENDATION

        b.      Exhibits 11-12- The Bart Group's Motion for Summary Judgment (DE 137) and Statement of Material Facts (DE 140),

        c.      Exhibits 13-14- The Bart Group's Opposition to The Mercado Group's Motion for Summary Judgment and Statement of Facts (DE 177-178)

        d.      Exhibits 15-16- The Mercado Group's Opposition to The Bart Group's Motion for Summary Judgment and Statement of Facts (DE 194,179)

        e.      Exhibit 17- The Mercado Group's Reply (DE 187)

        f.      Exhibit 18- The Bart Group's Reply (DE 195)

22.     On November 24, 2008, the Florida Court issued an Order Denying in Part and Granting in Part Motions for Summary Judgment. See **Exhibit 19** (DE 217).

23.     On December 9, 2008 both parties filed a Joint Pre-Trial Stipulation (**Exhibit 20**) (DE 251).

24.     A jury trial was held and on January 26, 2009 and January 28, 2009, and jury verdicts were entered. See **Exhibits 21-22** (DE 379, 386).

25.     A Judgment was entered on February 4, 2009. See **Exhibit 23 (**DE 393).

26.     Both parties filed post-judgment motions seeking to alter or amend the Judgment and/or Judgment as a matter of law. See **Exhibits 24-36**:

        a.      Exhibits 24-26- The Bart Group's Post Judgment Motions and Memorandum of Law (DE 395-397)
        b.      Exhibits 27-28- The Mercado Group's Oppositions to The Bart Group's Post-Judgment Motions (DE 400 (opposition to DE 396 & 397) and DE 401 (opposition to DE 395))
        c.      Exhibits 29-30- The Bart Group's Replies regarding its Post-Judgment Motions (DE 407 (in support of DE 395) and DE 408 (in support of DE 396-97))
        d.      Exhibits 31-32- The Mercado Group's Post-Judgment Motions (DE 398 and DE 399)
        e.      Exhibits 33-34- The Bart Group's Oppositions to the Mercado Group's Post-Judgment Motions (DE 405 (opposition to DE 398) and DE 406 (opposition to DE 399))
        f.      Exhibits 35-36- The Mercado Group's Replies regarding its Post Judgment Motions (DE 409 (in support of DE 398) and DE 410 (in support of DE 410))

27.     An Amended Judgment was issued on October 26, 2009. See **Exhibit 37** (DE 440).

28.     On September 29, 2009, the Florida Court entered an Order regarding post judgment motions. See **Exhibit 38** (DE 429). Among other things, in that Order the Florida Court scheduled a status conference to discuss the trademark issue. The Florida Court requested briefing on that point prior to the status conference.

29. The parties submitted their respective briefs on the trademark issue on October 13, 2009. See **Exhibits 39 & 40** (DE 433, 434).

30. On October 23, 2009, the Court entered an order cancelling the status conference. See **Exhibit 41** (DE 437).

31. The Florida Court then entered Amended Order Granting in Part Defendants' Motion to Alter or Amend Judgment, Denying Status Conference and Denying Remaining Post-Trial Motions. See **Exhibit 42** (DE 439).

32. For all pleadings, motions, or documents from Civil No. 07-20136 referred to in these stipulations, the parties stipulate that such pleadings were filed and the content of the pleadings.  The parties do not stipulate the veracity or correctness of the contents of such pleadings, motions, or documents.

33. From November 2006 to the present, neither Bart Enterprises International, Ltd. nor the entities to which it assigned the rights and obligations under the 1995 Agreement have made any payments to Mr. Mercado.

34. Walter Mercado has not rendered any personal services to Bart Enterprises since November 2006, except for the recordings for the show of Primer Impacto up to August 2007, which benefits therefrom were received by Bart from Univision without Walter Mercado receiving compensation.

35. Walter International Productions, Inc., Watervision, Inc., Waltervision Productions, Inc., Walter Mercado Radio Productions, Inc., Bart Enterprises  International, Ltd., and Walter Mercado Enterprises Corp. continued to use the Walter Mercado's name, image and trademark after November, 2006 and up to this date.

36. On March 31, 2009, Waltervision Productions, Inc., represented by Bill Bakula,  and SCI At Home, LLC, entered into a License and Advertising Agreement whereby Waltervision Productions, Inc., purported to grant SCI At Home, LLC the right to use the Walter Mercado mark in connection with 800 telephone numbers and prepaid calling cards and 900 telephone numbers pay per call live astrological or psychic readings.  See **Exhibit 43**.

37. Arcane Creative LLC started using Walter Mercado's name, image, and trademark in 2008 and has continued using them up to this date.

38. By May, 2009, Arcane Creative LLC was operating and is doing so up to this day, the website waltermercado.net that provides interactive astrological and psychic consultation through the internet.

39. **Exhibit 44** constitutes a true and correct copy of a print out of information and statements provided in the website waltermercado.net by Arcane Creative.

40. Bart International Enterprises LTD and/or any of its assignees have operated or caused to operate 1 -800 psychic lines using the name and image of Walter Mercado after February, 2007 and up to the present.

41. Bart International Enterprises LTD and /or any of its assignees have operated or

caused to operate SMS/text messages services using the name and image of Walter Mercado after February, 2007 and up to the present.

42.     Bart International Enterprises LTD and/or any of its assignees have received payments in connection to the exploitation of the Walter Mercado trademark, name, and/or image since February 2007 and up to the present.

43.     The authenticity and content of all correspondence exchanged between the parties after the Florida Litigation and the fact that it was sent and received by the parties are stipulated. The veracity of the assertions made in those letters is not stipulated. These letters include the following:

   a.     Letter from February 6, 2009 from Bart to Mercado. (Ex. 45)
   b.     Letter of February 16, 2009 from Mercado to Bart. (Ex. 46)
   c.     Letters of February 23, 2009 from Bart to Mercado. (Ex. 47)
   d.     Letter of February 23, 2009 from Bart's Counsel to Mercado's Counsel (Ex. 48).
   e.     Letters of March 20, 2009 from Mercado to Bart. (Ex. 49)
   f.     Notice of March 20, 2009 (Ex. 50)
   g.     Letter of March 30, 2009 from Bart to Mercado. (Ex. 51)
   h.     Letter of May 15, 2009 from Mercado to Bart. (Ex. 52)
   i.     Letter of May 26, 2009 from Bart to Mercado.  (Ex. 53)

   <u>See</u> **Exhibits 45-53**.

44.     The authenticity and content of the following correspondence, also exchanged between the parties, and the fact that it was sent and received by the parties are stipulated.  The veracity of the assertions made in those letters is not stipulated. This correspondence includes the following:

   a.     October 27, 2004 email from Bill Bakula
   b.     October 4, 2006 letter from Bart's counsel at the time to Mercado's counsel at the time.

   <u>See</u> **Exhibits 54-55.**

45.     The "Walter Mercado" trademark application was filed in the United States Patent and Trademark Office ("USPTO") by Bart on October 8, 1996.

46.     On July 11,1997, Mercado executed an Affidavit in connection with the application. <u>See</u> **Exhibit 56.**

47.     On October 21, 1997, Mercado signed a Sworn Statement in connection with trademark registrations in Mexico.  <u>See</u> **Exhibit 57.**

48.     On December 4, 2004, the U.S. trademark was cancelled.

49.     On May 5, 2005, Mercado executed a "Consent of Living Individual". <u>See</u> Exhibit 58.

50.     On May 10, 2005, Mercado executed a Power of Attorney.  <u>See</u> Exhibit 59.

51.     On August 1, 2006, Univisión executed an "Agreement to acquire Walter Mercado Horoscope Segments and Walter Mercado Shows television programs produced by or on behalf of Walter International Productions Inc. for a term of one year." <u>See</u> **Exhibit 60.** The authenticity of the Agreement included as Exhibit 60 is stipulated, not its relevance, admissibility, or probative value.

52.     In connection with the 2006 Univisión Agreement, Mercado executed an Acknowledgment. <u>See</u> **Exhibit 61.** The authenticity of the document included as Exhibit 61 is stipulated, not its relevance, admissibility, or probative value.

53.     On August 1, 2006, Ms. Wilma Torres, secretary and book keeper for Astromundo, sent the attached invoice to "Marisela Carvajal" (The Bart Group's then bookkeeper). <u>See</u> **Exhibit 62.** The authenticity (only) of the document included as Exhibit 62 is stipulated, not its relevance, admissibility, or probative value.

54.     Ms. Wilma Torres, secretary and book keeper for Astromundo prepared a "Payment and Deposits Record Bill/Bakula/Related Companies". <u>See</u> **Exhibit 63.** The authenticity (only) of the document included as Exhibit 63 is stipulated, not its relevance, admissibility, or probative value.

(Docket No. 133-2).

# DISCUSSION

## I.     Standard for Preliminary Injunction

Requests for preliminary injunction are brought pursuant to Rule 65 of the Federal Rules of Civil Procedure. The preliminary injunction standard is familiar: "[b]efore granting this type of relief, a . . . court must consider (1) the likelihood of the movant's success on the merits; (2) the anticipated incidence of irreparable harm if the injunction is denied; (3) the balance of relevant equities (i.e., the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue); and (4) the impact, if any, of the court's action on the public interest." <u>Borinquen Biscuit Corp. v. M/V Trading Corp.</u>, 443 F.3d 112, 115 (1st Cir. 2006) (citations omitted). The first factor is the *sine qua non* of this four-part formulation. <u>Id.</u> (citation omitted). "The importance of that inquiry is magnified in trademark cases because the resolution of the other three factors will depend in large part on whether the movant is likely to succeed in establishing infringement." <u>Id</u>. If a trademark holder demonstrates such a

likelihood, then, traditionally, irreparable harm can be assumed.[5]  Id. (citations omitted).

## II.    Plaintiffs' Motion for Preliminary Injunction (Docket No. 74)

Plaintiffs seek to enjoin defendants from (1) using the name "Walter Mercado," (2) using the trademark "Walter Mercado," (3) using the likeness of Walter Mercado, and/or (4) using "any other indicia of Walter Mercado's identity with regards to any psychic or astrological service, or any other service, that is not the fruit of Mr. Mercado's labor and/or has not been controlled, supervised, or approved in any form by Mr. Mercado."  Plaintiffs also seek an injunction against (5) defendants' use of Mercado's name, trademark, likeness, and other indicia of identity in relation to the www.waltermercado.net website and the 1-800-883-9520 hotline.  (Docket No. 74, ¶ 6).

After careful review of the Agreement, the parties' arguments, and the facts and exhibits on record, I conclude that the court should issue a preliminary injunction against defendants' use of the Mark and Mercado's name, likeness, and other indicia of identity with regard to (1) any product or service that is not the fruit of Mercado's labor, has not been controlled, supervised, or approved in any form by Mercado, and was produced *after* the Additional Services Term ended in June 2007 (hereinafter "Post-Performance Materials"), as well as (2) the www.waltermercado.net website, and (3) the 1-800-883-9520 hotline.  However, I do not recommend that defendants be enjoined from using the Mark or Mercado's name or likeness in relation to the Preexisting Materials, the New Materials, or any materials in which Mercado was not personally involved but which were created

---

[5] Some courts of appeal have questioned whether the presumption of irreparable harm still applies in copyright and trademark infringement cases in light of the Supreme Court's decision in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), which concerned permanent injunctions in the patent law context.  See, e.g., N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1227-28 (11th Cir. 2008) (remanding to district court to determine effect of eBay on "irreparable harm" analysis in trademark infringement cases); Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010) (holding that, after eBay, finding of likelihood of success on merits in copyright infringement cases does not raise "irreparable harm" presumption).  However, the First Circuit, which decided Borinquen Biscuit the month before eBay was decided, "has made no indication that the presumption is no longer applicable to preliminary injunctions in trademark cases."  Operation Able of Greater Boston, Inc. v. Nat'l Able Network, Inc., 646 F. Supp. 2d 166, 176-77 (D. Mass. 2009); see also Nationwide Payment Solutions, LLC v. Plunkett, 697 F. Supp. 2d. 165, 168 & n.1 (D. Me. 2010) (citing Operation Able and applying the Borinquen Biscuit standard).  Therefore, I will employ the presumption where it is applicable.

during the Additional Services Term.  This conclusion is driven in large part by the court's construction of the language of Agreement as to certain issues that are sharply disputed by the parties.  I will therefore discuss these matters before addressing the factors of the preliminary injunction analysis.

> **A.    Scope of Agreement's Grant of Rights**

The parties disagree, first, as to the scope of the grant of rights covered by the Agreement.  Plaintiffs contend that the Agreement authorized defendants to use the Walter Mercado Mark, name, and likeness only in connection with works and services that Mercado personally performed, authorized, or approved during the Agreement's Additional Service Term. Defendants, for their part, assert that the grants under the Agreement were a total and irrevocable assignment of the rights to use the Mark, name, and likeness in perpetuity.

When interpreting contracts, the court must read contract provisions in relation to one another, giving unclear provisions the meaning which arises from considering all provisions together. 31 L.P.R.A. § 3475.  As demonstrated by consistent language throughout the document, the Agreement contemplates that the grants of rights to the Mark and Mercado's name and likeness be restricted to the Preexisting Materials and the New Materials for which Mercado personally performed, *i.e.*, rendered services.  The Agreement commences with a preamble that recites, *inter alia*, that (1) respecting the Preexisting Materials, "Bart has made provisions to obtain ownership rights to [Preexisting Materials] featuring Mercado performing and promoting his psychic and astrological services" and "Bart and Mercado desire to confirm Bart's ownership rights in and to the results and proceeds of Mercado's past services, and in and to [the Mark] *in connection with* the Preexisting Materials"; and (2) respecting the New Materials, "Bart desires to produce and distribute Additional Materials . . . featuring and promoting Mercado's psychic and astrological abilities" and "Mercado desires to grant Bart the right to produce and distribute Additional Materials, and the right to use Mercado's name and likeness and to own [the Mark] *in connection therewith*" (emphasis added).  (Docket No. 7-5, p. 8-9).  While a preamble is not part of the operative agreement, see, e.g.,

Grynberg v. F.E.R.C., 71 F.3d 413, 416 (D.C. Cir. 1995), the precatory language in the Agreement's preamble is consistent with the operative language elsewhere in the Agreement, which provides support for the court's construction thereof.

The "Grant of Rights" section provides, with respect to the Preexisting Materials, that Mercado "irrevocably assigns to Bart throughout the Territory during the Term, all right. . . in and to all Preexisting Materials . . . which Mercado heretofore created or originated for [Shoop], and all prior results thereof, *in connection with* Mercado's astrological and psychic activities" (emphasis added). (Docket No. 7-5, p. 9, § 1(a)).  As to New Materials, the Agreement provides, "Mercado hereby grants to Bart the exclusive right and license during the term and throughout the Territory to develop, produce, distribute and copyright in its own name new materials . . . *relating to* Mercado's psychic and astrological *services*" (emphasis added). (Id., p. 10, § 1(b)).  The "Additional Services Agreements" section of the Agreement provides, "Mercado agrees to provide additional . . . services to Bart *in connection with the creation of the New Materials during the Additional Services Period*" (emphasis added). (Id., p. 13, § 6(b)).  Importantly, therefore, the "New Materials" that defendants are allowed to develop, produce, and distribute pursuant to the Agreement include only materials for which Mercado personally provided services during the twelve-year Additional Services Period (consisting of the initial ten-year term plus one two-year term extension).  (Id., § 6(b)(ii)).

As to the Mark, the parties acknowledge in the Agreement that the Mark "has been used and associated with the Preexisting Materials" (id., p. 10, § 2(a)), then provides,

> Mercado hereby irrevocably assigns to Bart throughout the Territory during the Term, all right, title and interest in and to the Mark, together with that part of the goodwill of Mercado's business connected with and symbolized by said Mark, *for use in connection with* the Pre-existing Materials and the New Materials, if any. Such assignment includes but is not limited to the right to use the Mark in connection with Preexisting Materials and the New Materials in any and all media now known or hereafter developed . . . .

(Id., p. 11, § 2(b)) (emphasis added).[6]  The Name and Likeness section also acknowledges that

---

[6] The provision goes on to provide an extensive list of media (*e.g.*, theatrical, television, print). The "Preexisting Materials" and "New Materials" sections contain similar language.  The court reads the

Mercado's name and likeness "has been used *in connection with* the production and exploitation of the Preexisting Materials, and [that] Bart intends to use Mercado's Name and Likeness *in connection with* the New Materials" (emphasis added).  (Id., § 3(a)).  The Agreement then provides that Mercado "hereby grants to Bart the right and license during the Term and throughout the Territory to use Mercado's [name and likeness] *in connection with* the Preexisting Materials and the New Materials . . . subject, however, to Mercado's right to prior approve [*sic*] any such use," to which certain conditions attach (emphasis added).[7]  (Id., p. 12, § 3(b)).

A review of the above language demonstrates that the Agreement did not, as defendants contend, grant Bart unlimited rights to use the Mark and Mercado's name and likeness.  Rather, the grant clearly and consistently confined the grant of rights to the Preexisting Materials and the New Materials: materials for which Mercado personally performed or approved within the term of the Additional Services Period.  Because the language of the Agreement is clear on this point, the court will not consider parol evidence about the grant of rights.  See 31 L.P.R.A. § 3471.

Therefore, under the Agreement, Bart could no longer continue to create new products using the Mark or Mercado's name or likeness once Mercado had ceased providing services.  The Post-Performance Materials – that is, any materials (1) created after the Additional Service Term expired, (2) for which Mercado did not personally provide services, and (3) which use the Mark or Mercado's name or likeness – are not authorized by the Agreement because such use by defendants of the Mark and the Mercado name and likeness is outside the scope of the rights granted in the Agreement.

### B.     Term Applicable to Compensation Provisions

The parties also dispute the term applicable to the compensation provision at Section 6(c)

---

"including but not limited to" clauses in these provisions as "including but not limiting" what languages and media are covered by the grant of rights, not as "including but not limiting" what rights are granted. (Docket No. 7-5, p. 9, 10, 11, §§ 1(a), 1(b), 2(b)).

[7] Under the Agreement, Mercado's right to prior approval is "not to be unreasonably withheld.  If such approval is not communicated to Bart within forty-eight (48) hours of Mercado's receipt of the materials, such right of approval shall be deemed waived."  (Docket No. 7-5, p. 12, § 3(b)).

of the Agreement. Plaintiffs contend that Bart's duty to provide compensation outlives the twelve-year term established for Mercado's duty to provide services.  Accordingly, plaintiffs argue that Bart was required to continue to pay plaintiffs $25,000 per month in perpetuity or until the Agreement is terminated, even though Mercado performed no services after 2006.  (Docket No. 137, p. 3-6). Defendants, for their part, argue that the period during which Mercado was entitled to compensation was coterminous with the Additional Services Period, and that Bart's obligation to pay Mercado ended when that period expired.  (Docket No. 136, p. 1-5).   Upon close review of the Agreement, the court agrees with defendants.

The "Compensation" provisions are a subsection of the "Mercado's Services" section of the Agreement.  (Docket No. 7-5, p. 14-15, § 6(c)).  Although plaintiffs are correct that a miscellaneous provision of the Agreement provides that the contract's paragraph headings "are for convenience only and shall not be deemed to affect in any way the meaning of the provisions to which they prefer"  (id., p. 27, § 20(f)), my conclusion is guided by substance and context, and not labels. Importantly, the Compensation provision is embedded within the Section Six of the Agreement concerning Mercado's services, and not in earlier sections of the Agreement, which concern the granting of rights.  In particular, Section Six first cancels Mercado's "Prior Services Agreement" contract with Shoop, then provides for the "Additional Services" Mercado is to render (to make New Materials), and finally outlines a compensation structure.  (Id., p. 12-15, § 6). The logical reading of these subsections is that the compensation is for Mercado's services.  Therefore, the Additional Services Term of twelve years set forth in Section 6(b)(ii) - not the Term of perpetuity found at Section 5 - applies to the Compensation provisions.

Moreover, as discussed above, the grant of rights in the "Grant of Rights" section is tied to services, particularly with regard to the New Materials.  Bart has no rights under the Agreement to use the Mark or Mercado's name or likeness except in connection with the Preexisting Materials and the New Materials, for which Mercado provided services.  No New Materials could be generated past the end of the Additional Services Term.  For the "Grant of Rights" and "Mercado's Services"

sections to be read consistently, the Compensation section must be governed by the Additional Services Term.  See 31 L.P.R.A. § 3475 (court reads contract provisions in relation to each other).

Notwithstanding the above, plaintiffs argue that the Compensation provision specifies that that the payments due are "in consideration of all services rendered by Mercado and the use of the results thereof *and all rights granted by Mercado to Bart*" (emphasis added).  (Docket Nos. 7-5, p. 14, § 6(c); 137, p. 3-4).  Plaintiffs further contend that the compensation provision specifically designates that $5,000 shall be paid monthly for costumes, and that $2,000 must be paid for "up to 25 three minute segments per month."  In plaintiffs' view, these payments cover all of the compensation for Mercado's "services," and only these "services" payments should be governed by the twelve-year services term.  Plaintiffs argument continues that the remaining monthly payment of $25,000 must therefore correspond exclusively to the granting of rights, and should be governed the term of perpetuity set forth at Section 5.

I find that plaintiff's view lacks merit.  Importantly, there is little support in the Agreement for plaintiff's conclusion that the $25,000 monthly payment was intended to correspond exclusively to the granting of rights.  First, there is no language in the Compensation section that specifically states that the $25,000 payment was intended to correspond to the granting of rights.  Moreover, the services contemplated in the Agreement are not limited to the 25 three minute segments per month for which the Agreement provides specific compensation; rather, those services include, but are not limited to, "creating audiotext recordings for pay per call services, appearing in long form commercials ('Infomercials'), creating print, radio and television advertising and making personal appearances").  (Docket No. 7-5, p. 13, § 6(b)(i)).  It therefore appears more likely that the parties intended the $25,000 monthly payment to correspond to these services.  Accordingly, I find that the term for providing compensation to Mercado was governed by the twelve-year term set forth in Section 6(b)(ii).

### C.    Remedies Available to Plaintiffs

The parties next dispute whether the Agreement precludes plaintiffs from obtaining injunctive

relief.  Defendants argue that injunctive relief is foreclosed by the "Remedies" section, which

provides,

> Subject to the terms of this agreement, all grants granted or assigned by this
> agreement shall be irrevocable under all or any circumstances, and shall not be
> subject to rescission, termination or injunction.  In the case of breach of this
> agreement by Bart, Mercado's sole remedy shall be limited to an action at law for
> damages.

(Docket No. 7-5, p. 22-23, § 13).  Plaintiffs counter that because Mercado exercised his contractual

option to declare the Agreement null and void due to defendants' nonpayment[8] (id., p. 20-21, §

12(a)(iii)), the Agreement, including the "no injunctive relief" clause, is void *ab initio*.

As discussed above, the only grants conferred by the Agreement are in connection with the

Preexisting Materials and the New Materials.  Bart's use of the Mark and Mercado's name and

likeness on the Post-Performance Materials is outside the scope of the Agreement – and thus is not

subject to the Remedies section's prohibition against injunction.  Therefore, the "no injunctive relief"

clause does not prevent an injunction against Bart's use of the Mark or Mercado's name or likeness

in connection with any Post-Performance Materials.

However, Mercado seeks a blanket injunction against Bart's use of the Mark, name, and

likeness – which by definition includes the Preexisting Materials and the New Materials, which are

covered by the Agreement.  As discussed above, pursuant to the Compensation provisions, Mercado

was entitled to compensation only during the Additional Services Term, which plaintiffs maintain

ended in June 2007.[9]  The parties have stipulated that, save for the "Primer Impacto" recordings,

Mercado has not performed since November 2006, nor have defendants paid Mercado since

---

[8] The Agreement's "Termination" provisions include the following:

(iii) Notwithstanding anything herein to the contrary, if Bart fails to make any of the
above mentioned payments, in [the Compensation subsection], within sixty (60) days
from the due date, then Mercado shall have the option to declare this contract null and
void . . . , provided Mercado gives Bart written notice . . . and Bart fails to cure . . . .
(Docket No. 7-5, p. 20-21, § 12(a)(iii)).

[9] In their answer to plaintiffs' complaint, defendants admit that the Florida court "found that the
two (2) year extension of the services [term] . . . was valid."  (Docket No. 76, ¶ 45).

November 2006.  Moreover, the Florida jury determined that Bart was not behind on its payment obligations at the time Mercado ceased performing.

As defendants point out, the Puerto Rico Civil Code provides that once a party fails to fulfill its obligations under a contract, the other party is no longer bound to comply with its own obligations.  See 31 L.P.R.A. § 3052; Dyno Nobel, Inc. v. Amotech Corp., 63 F. Supp. 2d 140, 151 n.4 (D.P.R. 1999).  Therefore, Bart's non-payment between November 2006 and June 2007 did not entitle Mercado to declare the Agreement null and void.  Consequently, the Remedies section's "no injunctive relief" clause remains in effect, and Mercado is not entitled to injunctive relief as to any of his claims arising from the rights granted under the Agreement - that is, defendants' allegedly unauthorized use of the Mark and Mercado's name and likeness in connection with the Preexisting Materials and New Materials.

### D.      Estoppel of Plaintiffs' Claims

Defendants next invoke the doctrines of collateral estoppel and *res judicata* in contending that plaintiffs' claims in the instant case are precluded because they are based on  the same factual issues decided in the Florida litigation and because plaintiffs could have brought their claims in that litigation.  (Docket Nos. 136, p. 5-9; 143, p. 6-9).  Plaintiffs argue that the instant claims could not have been brought in the earlier litigation.  (Docket Nos. 137, p. 6-10; 142, p. 5-9).

The court agrees with plaintiffs.  For one, the claims for nonpayment pertain to different time periods (before and since November 2006, respectively).  Furthermore, plaintiffs' claims also arise out of other conduct that occurred after the Florida litigation began in early 2007, so the claims could not have been included in the prior litigation.  Namely, the parties stipulated that Bart has operated 1-800 numbers and text message services since February 2007, that Arcane started using the Mark, name, and likeness in 2008, that Waltervision entered a contract with SCI At Home in March 2009, and that the waltermercado.net has been in operation since May 2009.

Moreover, it is irrelevant whether Mercado contested the Agreement's original grant of rights in the Florida litigation.  The claims here pertain largely to defendants' use of the Mark, name, and

likeness after the end of the Additional Services Term in June 2007, *i.e.*, outside the scope of the Agreement.  As such, the claims could not have been ripe when the Florida litigation began and are not estopped by the Florida court's validation of the Agreement.[10]  Indeed, any argument as to the character of the grant of rights – an outright assignment or a limited license – would not have been ripe until the expiration of the Additional Services Term, since defendants could use the Mark, name, and likeness in New Materials until the end of that period.  In short, I find that plaintiffs' claims are not estopped, and thus I turn to the analysis of plaintiffs' preliminary injunction request.

### E. Preliminary Injunction Analysis

As noted, the court evaluates four factors in determining a movant's entitlement to injunctive relief.  Because I have found that plaintiffs may not seek injunctive relief with regard to the Preexisting Materials and the New Materials, I will consider only the Post-Performance Materials.[11]

Under the first factor, the court must consider the likelihood of plaintiffs' success on two elements of an infringement action: (1) that the Mark merits protection, and (2) that defendants' allegedly infringing use is likely to result in consumer confusion.  Borinquen Biscuit, 443 F.3d at 116.  To be eligible for trademark protection, a mark must qualify as distinctive.  Id. (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992)).  Distinctiveness is typically classified along a continuum comprising five categories: generic marks, descriptive marks, suggestive marks,

---

[10] For the same reason, the court also finds unavailing defendants' argument that Mercado is estopped from objecting to defendants' conduct outside the scope of the Agreement because he continually waived his right of approval under the Agreement.  That right of approval pertained only to quality control over materials Bart created during the Additional Services Term, so his waiver during the term does not preclude him from objecting to conduct Bart engaged in after the end of the term.

[11] Even if the court were to go through the analysis with regard to the Preexisting Materials and the New Materials, injunctive relief should be denied because plaintiffs are not likely to succeed in showing their ownership and defendants' infringement of the Mark in connection with those materials.  As the Florida court noted, the Agreement provides for reversion of rights to Mercado only upon termination of the Agreement.  (Docket No. 133-23, p. 15-16).  As discussed, Bart's non-payment was not grounds for termination by Mercado in light of his own non-performance.  The first factor of the analysis therefore cuts against plaintiffs, and as the other three factors flow in large part from the first factor, Borinquen Biscuit, 443 F.3d at 115, the conclusion follows that an injunction is inappropriate.

arbitrary marks, and fanciful marks.  Id. (citations omitted).  Personal names are generally considered descriptive terms, which are not inherently distinctive.  Quiksilver, Inc. v. Kymsta Corp., 466 F.3d 749, 760 (9th Cir. 2006) (citations omitted).  However, if the personal name mark acquires secondary meaning, it is afforded the strength of an inherently distinctive mark.  Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C., 931 F.2d 1519, 1522 (11th Cir. 1991) (citation omitted).

A party seeking protection for an unregistered trademark must affirmatively demonstrate that its mark is distinctive (either inherently or through acquired secondary meaning).  Borinquen Biscuit, 443 F.3d at 117 (citation omitted).  In the instant case, Astromundo's November 2006 application for Patent and Trademark Office (PTO) registration of the Mark on the Principal Register is still pending because of defendants' ongoing opposition.[12]  (Docket No. 1-4, ¶ 38).  See also U.S. Trademark Application Serial No. 77-047157 (filed Nov. 17, 2006).  Consequently, the court treats the Mark as unregistered.  See Glow Indus., Inc. v. Lopez, 252 F. Supp. 2d 962, 972 (C.D. Cal. 2002).  Thus, plaintiffs must show that the Mark has acquired secondary meaning sufficient for it to qualify as distinctive.

The court finds that plaintiffs have adequately shown distinctiveness through acquired secondary meaning.  As is to be expected, defendants do not dispute that the Mark has secondary meaning.  Indeed, the Agreement itself provides, in the "'Walter Mercado' Mark" section, "The parties acknowledge that [the Mark] has been used and associated with the Preexisting Materials . . . [and] [a]s a result, the Mark has attained the status of a common law trademark and service mark." (Docket No. 7-5, p. 10, § 2(a)).  In determining whether a term has acquired secondary meaning, the court considers factors including: (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark, and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or

---

[12] Bart, too, filed an application for Principal Register registration of the Mark, which is also caught up in the internal opposition proceeding before the Trademark Trial and Appeal Board (TTAB). The proceeding apparently has been suspended, possibly due to the pendency of this litigation.  See U.S. Trademark Application Serial No. 77-180667 (filed May 14, 2007).

venture.  Volkswagenwerk AG v. Wheeler, 814 F.2d 812, 816 (1st Cir. 1987) (citations omitted).

Here, the parties have stipulated that Mercado has worked as a psychic and astrologist for nearly forty years and is well-known in those roles in Puerto Rico, the United States, and Latin America. (Docket No. 133-2, ¶¶ 1-2). Plaintiffs' complaint alleges, and defendants admit, that while the parties were making New Materials together between 1995 and 2006, Mercado "us[ed] his name, image, and [the Mark] commercially in the horoscopes he prepared for the press and radio.  Bart . . . developed various projects for television, text messaging, psychic lines, books, and CDs" using the Mark.  (Docket No. 1-4, ¶ 35; Docket No. 76, ¶ 35).  Defendants allege that "Mercado's fame and recognition grew vastly during the Bart Group's first decade under the 1995 Agreement." (Docket No. 76, ¶ 17).  Plaintiffs deny this, alleging rather that "Mercado was a well known psychic and astrologer well before the 1995 Agreement was executed.  His fame has grown consistently during the years due to his unique abilities and services."  (Docket No. 118, ¶ 17).  This is a distinction without a difference: the parties agree that Mercado's repute grew during the years covered by the Agreement.  While the foregoing is hardly the voluminous evidence courts commonly have before them when making a secondary meaning determination, the court is satisfied that it may reasonably infer that the Mark has acquired secondary meaning.  See Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co., Inc., 9 F.3d 175, 182 (1st Cir. 1993) ("Proof relating to these [secondary meaning] factors constitutes circumstantial evidence from which a court must draw reasonable inferences.").  Therefore, because the Mark is distinctive, it is entitled to protection.

Next, plaintiffs must also demonstrate a likelihood of success on another element, likelihood of consumer confusion.  The court examines eight non-exclusive factors to be used as guides on this issue: (1) the similarity of the marks; (2) the similarity of the goods (here, services, as the Mark is a service mark); (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark. Wheeler, 814 F.2d at 817 (citations omitted).  The list is merely illustrative; the purpose of the

inquiry is to determine whether "the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." The Shell Co. (P.R.) Ltd. v. Los Frailes Serv. Station, Inc., 605 F.3d 10, 21-22 (1st Cir. 2010) (citation and quotation omitted).

The marks used are, of course, identical. The services are similar, since both parties provide astrological and psychic services that use the Mark and Mercado's name and image, though defendants' services allegedly feature psychics other than Mercado. The classes of prospective customers are identical: individuals who seek astrological and psychic advice under the aegis of Walter Mercado. The Mark appears relatively strong:[13] the parties agree that during his nearly forty-year career, Mercado has achieved significant renown (through both parties' efforts) as a psychic and astrologer in Puerto Rico, the United States, and Latin America. Although plaintiffs allege that defendants' use of the Mark is fraudulent, defendants' intent in adopting the Mark does not appear to have been deceptive or in bad faith; indeed, Bart began using the Mark pursuant to the Agreement and maintains that it thereby remains the Mark's rightful owner.

The factual record is not well-developed at this time as to channels of trade, advertising, or actual confusion. Defendants currently use or have licensed third parties to use the Mark, name, or likeness in conjunction with the www.waltermercado.net website, the 1-800-883-9520 phone line and other 800 and 900 numbers, prepaid calling cards, and SMS/text message services. (Docket Nos. 1-4, ¶ 89; 76, ¶ 89; 133-2, ¶¶ 36-41). However, while plaintiffs allege that Mercado has been unable to contract with third parties, they do not state how Mercado currently uses the Mark in doing business on his own, though he created horoscopes for print media and radio from 1995 to 2006. (Docket No. 1-4, ¶¶ 35, 61). Furthermore, while plaintiffs allege that defendants' use of the Mark

---

[13] A mark's strength is typically evaluated primarily on the basis of its "commercial strength" – its consumer recognition value in the marketplace. The court analyzes such factors as the length of time of the mark's use, its relative renown in its field, its strength in the plaintiff's field of business, and the plaintiff's action in promoting the mark. Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 16 n.14 (1st Cir. 2008) (citations omitted).

is causing consumer confusion, plaintiffs have not yet submitted competent evidence of actual confusion.

While certain factors tilt towards defendants and others cannot be evaluated for lack of evidence, I find that on balance, plaintiffs have demonstrated likelihood of consumer confusion. Defendants are catering to the same prospective customers as Mercado and are using the identical Mark for services similar to the ones Mercado has been providing in multiple countries for nearly four decades. Plaintiffs thus have shown a likelihood of success on the merits under the first factor of the preliminary injunction analysis. The first factor gives rise to a presumption of irreparable harm under the second factor. Borinquen Biscuit, 443 F.3d at 115.

Next, at the third factor, the court balances "the hardship that will befall the nonmovant if the injunction issues" against "the hardship that will befall the movant if the injunction does not issue." 443 F.3d at 115. As noted, plaintiffs allege that Mercado is losing substantial potential income because he cannot contract with third parties while defendants are claiming ownership of the Mark. On the other hand, he can work for himself, as he claims he did during the 1995 to 2006 period when the parties operated under the Agreement. Defendants, meanwhile, have invested significant resources in their business model (Docket No. 106, p. 2-3), but they may still use and promote the Preexisting Materials and the New Materials even if an injunction issues against their use and creation of Post-Performance Materials. In other words, each party, in the event of an adverse outcome, will suffer economic harm but will still have alternative means of income. However, the balance of hardships tips in Mercado's favor. As noted, irreparable harm is presumed. Moreover, Mercado had been operating under his personal name for many years before the Agreement (or its predecessor, the 1992 contract with Shoop). Also, the denial of an injunction would allow defendants to continue operating outside the scope of the Agreement without any concomitant benefit to plaintiffs.

Finally, the court considers the impact, if any, of its action on the public interest. 443 F.3d at 115. As plaintiffs point out, defendants are using the Mark, name, and likeness outside the scope

of the Agreement, on products and services which Mercado had no hand in creating. Plaintiffs have shown a likelihood of consumer confusion, and the public interest is served by preventing such confusion and deception. Thus this factor weighs in favor of plaintiffs.

In sum, the four-factor preliminary injunction analysis demonstrates that preliminary relief should be granted to plaintiffs respecting the Post-Performance Materials. Accordingly, I recommend that the court **grant in part** plaintiffs' motion as more fully described below. I recommend that *no* injunction be issued regarding the use of the Mercado Mark, name, likeness, or other indicia of identity in connection with the Preexisting Materials, the New Materials, or any materials using Mercado's name or likeness which were created during the Additional Services Term and in which Mercado's right of approval is deemed waived under section 3(b) of the Agreement. (See Docket No. 7-5, p. 12).

### III.   Defendants' Motion for Preliminary Injunction (Docket No. 126)

The court must next address defendants' cross-motion for preliminary injunctive relief. In their counterclaims against plaintiffs, defendants claim that plaintiffs are infringing the Mark and related marks[14] (collectively the "Mercado Marks"). (Docket No. 76, p. 21-46). Defendants seek, among other relief, a preliminary injunction prohibiting plaintiffs from using the Mercado Marks and from representing to third parties that plaintiffs own the Mercado Marks.[15] (Docket No. 126).

Because, as discussed, Mercado granted Bart rights in the Mark only in connection with the

---

[14] Defendants' counterclaim covers the marks "Walter Mercado" (the Mark), "Walter," "Walter Mercado Salinas," and "derivatives thereof as used in the astrological and psychic trades." (Docket No. 76, p. 22, n.1).

[15] Defendants' motion represents that "as of the close of the [Florida litigation] proceedings, Bart was the owner of the trademarks under the Agreement." (Docket No. 126, p. 7). But as this court has noted before, the Florida court did not accept Bart's invitation to determine who was the current owner of the Mercado trademarks because it found that the issue was not properly before it. At most, the Florida court determined that because Mercado's attempted termination of the Agreement was not valid, the rights under the Agreement did not revert to him. However, as discussed above, the rights under the Agreement include only the right to use the Mark and Mercado's name and likeness in connection with the Pre-existing and New Materials, and not in connection with any Post-Performance materials.

Preexisting Materials and the New Materials, Bart has no right to enjoin plaintiffs' use of the Mark in connection with materials that do not fall into those categories.  Defendants seek injunctive relief regarding the other Mercado Marks as well.  They claim that the owner of the Mark also has exclusive rights over the other marks, which are all composites of Mercado's name plus other elements. (Docket No. 126, p. 7, 14).  There is some support for this position: "Walter Mercado" "is not merely a component of the trademark, it *is* the mark." Dialogo, LLC v. Bauzá, 467 F. Supp. 2d. 115, 128 (D. Mass. 2006) (citing Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 283 (6th Cir. 1997)) (rejecting plaintiffs' argument that given sufficient differences between composite marks, "use of one does not generate a right to ownership of the other").  As said, however, defendants were granted rights in the Mark only in connection with the Preexisting Materials and the New Materials.  Therefore, defendants' rights in the other Mercado Marks extend no further than their rights in the Mark itself.

A preliminary injunction is appropriate only if plaintiffs are using the Mark and Mercado's name and likeness in connection with the Preexisting Materials and/or the New Materials; defendants, however, do not allege that plaintiffs are doing so.  Rather, defendants allege that plaintiffs have used the Mark in making a book; a CD; a website, www.waltermercado.com, which gives subscribers daily pre-recorded messages from Mercado; and horoscopes that Mercado has provided or contracted to provide to third parties in several countries, in media including periodicals, television, text messages, and pre-recorded audio and video messages.  (Docket No. 76, ¶¶ 68-78). These allegations suggest that plaintiffs are not "recycling" the Preexisting Materials or New Materials, but rather have been generating new content.  The evidence is simply insufficient at this point to make a conclusive determination.  Moreover, there is no evidence that Mercado has been representing to third parties that he owns the Preexisting Materials and/or the New Materials. Therefore, defendants have not shown that they are likely to succeed on the merits of their counterclaim.  As likelihood of success is the touchstone of the preliminary injunction claim, injunctive relief should be **denied**.

**Walter Mercado-Salinas, et al. v. Bart Enterprises International, Ltd., et al.**                    Page 25
**Civil No. 09-1509 (GAG/BJM)**
**REPORT AND RECOMMENDATION**

## CONCLUSION

For the reasons described above, I recommend that plaintiffs' motion for a preliminary injunction (Docket No. 74) be **GRANTED in part** and **DENIED in part**. Pursuant to Federal Rule of Civil Procedure 65(d), I recommend that the court issue a preliminary injunction against defendants' use of the Mark and Mercado's name, likeness, and other indicia of identity in connection with (1) any product or service that was created after the end of the Additional Services Term in June 2007, is not the fruit of Mercado's labor, and has not been controlled, supervised, or approved in any form by Mercado, (2) the www.waltermercado.net website, and (3) the 1-800-883-9520 hotline. I recommend that plaintiffs' motion be otherwise **DENIED**. I further recommend that defendants' motion to strike (Docket No. 82) and motion for a preliminary injunction (Docket No. 126) be **DENIED**.

The parties have fourteen (14) days to file any objections to this report and recommendation. See Local R. 72(d). The court hereby **sets aside** the three-day term provided by Local Rule 5(e) (formerly Local Rule 5.1(e)) for time computation. The parties are forewarned that no extension to this period will be granted. Failure to file objections within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

**IT IS SO RECOMMENDED.**

At San Juan, Puerto Rico, this 23rd day of August, 2010.


*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge