1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

**WALTER MERCADO-SALINAS, et al.,**

    **Plaintiffs,**

      **v.**                          **Civil No. 09-1509 (GAG/BJM)**

**BART ENTERPRISES
INTERNATIONAL, LTD., et al.,**

    **Defendants.**

## OPINION AND ORDER

Plaintiffs, Walter Mercado-Salinas ("Mercado") and Astromundo, Inc., brought this case in the Puerto Rico Court of First Instance against Defendants, Bart Enterprises International, Ltd. ("Bart"); Walter International Productions, Inc.; Watervision, Inc.; Waltervision Productions, Inc.; Walter Mercado Radio Productions, Inc.; Walter Mercado Enterprises Corp.; Arcane Creative LLC; and Guillermo Bakula.  (See Docket Nos. 1; 4.)  Defendants removed this case to the federal district court.  (See id.)  Plaintiffs accuse Defendants of, inter alia, trademark infringement and unfair competition in violation of federal law.  (See Docket No. 4-3 at 23-26.)

Plaintiffs seek a preliminary injunction to protect their trademark rights.  (See Docket No. 74.)  Defendants move to strike Plaintiffs' motion for preliminary injunction (see Docket No. 82) and to impose a preliminary injunction, asserting their rights to the same mark (see Docket No. 126).  This court referred these motions to Magistrate Judge McGiverin, who submitted a Report and Recommendation on August 23, 2010, recommending a partial preliminary injunction in favor of Plaintiffs and denial of Defendants' cross-motion and motion to strike.  (See Docket No. 194.)  The parties object to the Report and Recommendation.  (See Docket Nos. 206; 207.)

## I.     Standard of Review

Under Federal Rule of Civil Procedure 72(b), if the parties object to a magistrate judge's findings, "[t]he district judge must determine de novo any part of the magistrate judge's disposition"

**Civil No. 09-1509 (GAG/BJM)**                    2

that is subject to objection.  "The district judge may accept, reject, or modify the recommended

disposition . . . ."  Fed. R. Civ. P. 72(b)(3).

## II.      Relevant Factual and Procedural Background

Because the Report and Recommendation amply sets forth the background of this case and

the parties' stipulations and submissions (see Docket No. 194 at 1-9), the court repeats only the facts

relevant to the instant disposition.  Mercado is a well-known astrologer and psychic in Puerto Rico,

the U.S. mainland, and Latin America.  Astromundo, Inc., is a Puerto Rico corporation.  Defendants

are five business concerns and their principal, Bakula, with operations in Florida.

On August 4, 1995, Mercado and Bart entered into a contract (the "Agreement") governed

by Puerto Rico law (Docket No. 133-6).[1]  Under paragraph 2 of said Agreement, the parties identify

"Walter Mercado" as a common-law trademark and service mark (the "Mark") that had become

associated with certain "Preexisting Materials."  (See id. at 3.)  Mercado

> irrevocably assign[ed] to Bart throughout the Territory during the Term, all right, title
> and interest in and to the Mark, together with that part of the goodwill of Mercado's
> business connected with and symbolized by said Mark, for use in connection with the
> Pre-existing Materials and the New Materials, if any.  Such assignment includes but
> is not limited to the right to use the Mark in connection with Preexisting Materials and
> the New Materials in any and all media now known or hereafter developed . . . , the
> right to merchandise and the right to utilize the Mark in all advertising, promotion and
> publicity created in connection therewith.

(See id. at 4.)  Furthermore,

> Bart shall have all rights in the Mark which are afforded to owners of trademarks and
> service marks, including but not limited to the right to seek and obtain trademark
> protection and/or registration of the Mark in its name, and the right to enforce or
> defend Bart's rights against third parties.

(See id.)

Mercado also granted to Bart for the same duration and extent the right and license to use

Mercado's name, likeness, and other indicia of his identity "in connection with the Preexisting

Materials and the New Materials" in all forms of media, "subject, however, to Mercado's right to

---

[1] By applying Puerto Rico law to interpret the Agreement, Judge McGiverin implicitly finds that Puerto Rico
law governs the contract.  (See Docket No. 194 at 11.)  As neither party objects to this determination, the court likewise
applies Puerto Rico civil law to interpret the Agreement.  See 28 U.S.C. § 1652; Fed. R. Civ. P. 72(b)(3).

**Civil No. 09-1509 (GAG/BJM)**                    3

prior approve [sic] any such use, such approval not to be unreasonably withheld." (See id. at 4-5.)

The Agreement references "Schedule A" for the "Preexisting Materials." (See id. at 2.) Schedule A is a list of extant recordings of Mercado's psychic and astrological activities, without specifying the media used for the recordings. (See id. at 22-23.) The Agreement mentions "New Materials" in reference to print, audio, and visual media transmissions and recordings of Mercado's psychic and astrological services that would be created under the Agreement. (See id. at 3.)

The Agreement defines "Territory" as the universe and "Term" to be "in perpetuity . . . subject to the provisions of paragraph 12." (See id. at 5.) Paragraph 12 of the Agreement pertains to the parties' right to terminate the Agreement upon the occurrence of specific conditions. (See id. at 13.) Under one of these conditions, Mercado may terminate the Agreement with fifteen days' notice if Bart fails to pay Mercado any agreed compensation under paragraph 6 within sixty days of the due date. (See id.)

Under paragraph 6(c) of said Agreement, Bart agreed to pay Mercado "in consideration of all services rendered by Mercado and the use of the results thereof and all rights granted by Mercado to Bart" (1) $25,000 per month; (2) $5000 per month for costumes; (3) $2000 per month for up to twenty-five three-minute segments per month; and (4) additional fees contingent upon gross receipts from sales in foreign countries reaching specified targets. (See id. at 7.) Paragraph 6(b) stipulates that Mercado shall provide "Additional Services" under the Agreement for a period of ten years, with two possible two-year extensions at Bart's option. (See id. at 6.)

In November 2006, Mercado attempted to terminate the Agreement and stopped rendering services to Bart. (See Docket No. 133-23 at 5.) Bart has not paid Mercado under the Agreement since November 2006. (See Docket No. 194 at 7.) Mercado has not rendered any personal services to Bart since November 2006. (See id.)

On January 17, 2007, Defendants filed suit against Plaintiffs in the U.S. District Court for the Southern District of Florida, alleging breach of contract by Plaintiffs. (See Docket No. 133-7.) On February, 7, 2007, Plaintiffs filed a separate suit against Defendants in the U.S. District Court

**Civil No. 09-1509 (GAG/BJM)**        4

for the District of Puerto Rico, seeking, <u>inter alia</u>, an injunction to protect their federal trademark rights. (<u>See</u> Docket No. 133-8.) This court transferred Plaintiffs' case to the Southern District of Florida, which consolidated the case with Defendants' case in that court, with Judge Seitz presiding.

In her order granting partial summary judgment, Judge Seitz found that, although the Agreement defined the "Term" as perpetual, the duration of the Agreement could be cut short by termination because of the reference to paragraph 12. (<u>See</u> Docket No. 133-23 at 15-16.) Therefore, Mercado's assignment of his rights to the Mark and his likeness was subject to a condition subsequent, and the rights would revert to him upon termination under paragraph 12. (<u>See</u> <u>id.</u>)

On January 26, 2009, the jury rendered a special verdict in that case, finding that Mercado did not properly terminate the Agreement. (<u>See</u> Docket Nos. 133-25; 133-26.) In her amended judgment, Judge Seitz concluded that, because Mercado had failed to terminate the Agreement pursuant to paragraph 12, the Agreement was still in force. (<u>See</u> Docket No. 134-12 at 22.) As Bart retained its rights to the Mark and Mercado's likeness, the presiding judge dismissed Mercado's trademark claim as moot.[2] (<u>See</u> <u>id.</u>)

After the trial, Mercado corresponded with Bart by mail. On March 20, 2009, Mercado demanded payment from Bart within fifteen days in the amount of $675,000. (<u>See</u> Docket No. 134-25.) Mercado explained that Bart owed him this amount under paragraph 6(c)(i) of the Agreement, under which Bart promised to pay Mercado $25,000 per month. (<u>See</u> <u>id.</u>) According to Mercado, Bart had been delinquent in paying him this monthly sum for twenty-seven months from November 2006 through January 2009. (<u>See</u> <u>id.</u>) On May 15, 2009, Mercado declared his intent to terminate the Agreement pursuant to paragraph 12 because of Bart's failure to pay him the amount demanded in his previous letter. (<u>See</u> Docket No. 134-27.)

On May 18, 2009, Plaintiffs commenced the instant case in the Puerto Rico Court of First Instance, once again claiming protection of its trademark rights. (<u>See</u> Docket No. 1-4.) On June 8,

---

[2] The case is currently on appeal before the Court of Appeals for the Eleventh Circuit (Case No. 09-15971).

**Civil No. 09-1509 (GAG/BJM)**                    5

2009, Defendants removed the case to the federal district court.  On January 13, 2010, Plaintiffs moved for a preliminary injunction barring Defendants from using (1) the name, "Walter Mercado," (2) the Mark, (3) the likeness of Mercado, and (4) any other indicia of Mercado's identity, "with regards to any psychic or astrological service, or any other service, that is not the fruit of Mr. Mercado's labor and/or has not been controlled, supervised, or approved in any form by Mr. Mercado."  (See Docket No. 74 at 3.)  Defendants responded with a motion to strike Plaintiffs' motion on February 1 (Docket No. 82), and a cross-motion for preliminary injunction to protect its rights to the same Mark on April 5 (Docket No. 126).

On August 23, Judge McGiverin issued a Report and Recommendation that recommends a partial preliminary injunction in favor of Plaintiffs' right to the Mark and Mercado's likeness.  (See Docket No. 194 at 25.)  Under this proposed interim solution, Defendants would be permitted to use the Mark and Mercado's likeness only with respect to the "Preexisting Materials" referenced in the Agreement.  (See id.)  Both parties object.  (See Docket Nos. 206; 207.)  For the following reasons, the court adopts in part the Report and Recommendation.

**III.   Discussion**

Defendants object to Judge McGiverin's solution on the grounds that Mercado had irrevocably assigned his rights to the Mark to Bart, and that the doctrines of res judicata and collateral estoppel bar Plaintiffs' claims.  (See Docket No. 206.)  Plaintiffs, for their part, argue that they are entitled instead to the full rights to the Mark and Mercado's likeness.  (See Docket No. 207.)  The court considers these arguments with respect to Plaintiffs' motion for preliminary injunction before turning to Defendants' cross-motion.

**A.     Plaintiffs' Motion for Preliminary Injunction**

Plaintiffs seek injunctive relief against Defendants' use of the Mark and Mercado's likeness and indicia of his identity.  (See Docket No. 74.)  The court first discusses Plaintiffs' federal trademark claims before ruling on their claims for their right to publicity under Puerto Rico law.

**1.     Trademark Infringement**

Whether registered or not, federal law authorizes relief for the infringement of trademarks.

**Civil No. 09-1509 (GAG/BJM)**                6

See 15 U.S.C. § 1114; Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 117 (1st Cir. 2006).  The court considers four factors in ruling on a motion for preliminary injunction: (1) the likelihood of the movant's ultimate success on the merits; (2) the irreparable harm to the movant without the interim protection; (3) the balance of equities, namely the hardship that the movant would suffer without a preliminary injunction; and (4) the impact of the court's decision on the public interest.  Id. at 115.  In a federal trademarks case, "the cynosure of this four-part test is more often than not the movant's likelihood of success on the merits."  Id.  To establish a likelihood of ultimate success, the plaintiff must demonstrate both its entitlement to trademark protection and the likelihood of consumer confusion due to the alleged infringement.  Id. at 116.

As Plaintiffs' prayer for injunctive relief is premised upon their ownership of the Mark (see Docket No. 74), they cannot succeed on the merits without demonstrating this entitlement.  Because the parties do not object to Judge McGiverin's finding that the Mark constitutes a federal common-law trademark worthy of protection (see Docket No. 194 at 24), the court adopts this determination.  See Fed. R. Civ. P. 72(b)(3); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).  However, Mercado granted to Bart certain rights to the Mark under the Agreement.  (See Docket No. 133-6 at 4.)  Thus, the court examines Plaintiffs' trademark claims with respect to Mercado's grant of rights, the nature of the mark, Mercado's efforts to terminate the Agreement, and Plaintiffs' requested remedies.

### a.     Assignment of Rights

An owner of a trademark may assign the rights to the mark along with the goodwill associated with the mark.  May v. Goodyear Tire & Rubber Co., 10 F. Supp. 249, 256-57 (D. Mass. 1935) (citing United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97 (1918)); accord K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 325-26 (1988) (Scalia, J., dissenting).  In other words, rights to a trademark cannot be transferred in gross—separate from the business with which it is associated.  May, 10 F. Supp. at 257; 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:2 (4th ed. 2010); accord A. Bourjois & Co. v. Katzel, 260 U.S. 689, 692 (1923).  However, an owner of a trademark may assign rights to the mark in a distinct line of business that does not

**Civil No. 09-1509 (GAG/BJM)**                    7

compete with the owner's products bearing the same mark.  See Coca-Cola Bottling Co. v. Coca-Cola Co., 269 F. 796, 806-08 (D. Del. 1920) (cited in K Mart Corp., 486 U.S. at 326 (Scalia, J., dissenting)); McCarthy, supra, § 18:21; see also 15 U.S.C. § 1060(a)(1) (authorizing assignment of registered trademark "with that part of the good will of the business connected with the use of and symbolized by the mark").

After an assignment, the assignor must discontinue its use of the mark because the assignee gains exclusive rights to the mark.  Replogle v. Air-Way Co., 287 F. 765, 766-67 (D.C. Cir. 1923); McCarthy, supra, § 18:15.  "[T]he assignee would have the right to sue infringers in his own name." Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 159 n.6 (1st Cir. 1977) (citing Waterman v. MacKenzie, 138 U.S. 252 (1891)).  Furthermore, an assignee may register the trademark under its own name with the U.S. Patent and Trademark Office.  See 15 U.S.C. §§ 1051(a)(1), 1127.

According to the text of the Agreement, Mercado assigned to Bart "all right, title and interest in and to the Mark."  (See Docket No. 133-6 at 4.)  Moreover, the Agreement stipulates that Bart has the right to register the Mark in its own name as an owner of the trademark, as well as the right to enforce its rights in court.  (See id.)  It therefore appears that Mercado assigned full rights to the Mark, rather than granting a mere license to use the Mark.  See 15 U.S.C. §§ 1051(a)(1), 1127; Quabaug Rubber Co., 567 F.2d at 159 n.6 (defining licensee as person without exclusive right to sell product associated with trademark, and who cannot sue on his own behalf).

### b.    Scope of Assignment

Because assignments must include the goodwill of the associated business, A. Bourjois & Co. v. Katzel, 260 U.S. at 692, the court considers the scope of products and services covered by the Mark and the assignment.  To warrant legal protection, a putative trademark must be distinctive. Borinquen Biscuit, 443 F.3d at 116.  Such distinctiveness could be acquired through secondary meaning when the public associates the trademark with the source of the product or service.  Id.

Although the parties point to the Preexisting Materials as the basis for the Mark's distinctiveness, Plaintiffs assert that Mercado's fame as an astrologer long preceded the Agreement. (See Docket No. 194 at 19-20.)  Citing both grounds, Judge McGiverin concludes that the Mark has

**Civil No. 09-1509 (GAG/BJM)**          8

acquired secondary meaning to become a distinctive mark. (<u>See</u> <u>id.</u>)  Accordingly, the Mark could be linked to both media presentations of Mercado's psychic activities and the activities themselves, because Mercado is indelibly associated in the public mind with both lines of business. Furthermore, the parties agree that the Mark has gained the status of both a trademark and a service mark. (<u>See</u> Docket No. 133-6 at 3.)  Under federal law, a service mark identifies the services of a particular individual. 15 U.S.C. § 1127.

In granting rights to Bart, the Agreement states that the assignment encompassed "that part of the goodwill of Mercado's business connected with and symbolized by said Mark." (<u>See</u> Docket No. 133-6 at 4.)  This language connotes a full transfer of the business, rather than a partial assignment of rights connected to a distinct line of business.  Although the same text includes a subsidiary phrase noting that the assignment is "for use in connection with the Pre-existing Materials and the New Materials (<u>see</u> <u>id.</u>)," this language is purposive rather than restrictive of the scope of the assignment. <u>See</u> P.R. Laws Ann. tit. 31, § 3475 (providing that ambiguous terms must be construed to effectuate meaning that is apparent when contract is read as a whole).  Therefore, it appears that the Agreement conferred upon Bart all rights in the Mark, with respect to both media presentations of Mercado's psychic activities as well as his astrological services.

### c.   Termination and Reversion

The court now considers the applicability of res judicata and collateral estoppel with respect to the prior federal court decision in Florida.  "Federal law principles of res judicata govern the preclusive effect of a prior federal court's judgment on a subsequent action brought in federal court." <u>Apparel Art Int'l, Inc. v. Amertex Enters.</u>, 48 F.3d 576, 582 (1st Cir. 1995).

> The doctrine of collateral estoppel, or issue preclusion, is related but distinct. Under collateral estoppel, once a court has actually decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of that factual or legal issue in a suit on a different cause of action involving a party to the first action.

<u>Id.</u> at 583 n.9.  For collateral estoppel to apply, the prior decision must be a "<u>final</u>" judgment on the merits.  <u>See</u> <u>In re Kane</u>, 254 F.3d 325, 328 (1st Cir. 2001).  For the purpose of this rule, a judgment is "<u>final</u>" "even where the first, or issue preclusive, judgment is still on appeal when the second

**Civil No. 09-1509 (GAG/BJM)**                    9

action occurs." Id.

    As the same parties appear in both cases, the prior decision precludes any arguments that repeat issues that were previously decided. See id. In granting partial summary judgment, Judge Seitz found that Mercado's assignment under the Agreement was subject to reversion upon termination under paragraph 12. (See Docket No. 133-23 at 15-16.) As Plaintiffs cannot regain their rights absent a valid termination, Plaintiffs' instant motion likewise cannot obtain unless Mercado nullified the Agreement.[3] Thus, the relevant issue before this tribunal is the effect of Mercado's invocation of the termination clause in his letter dated May 15, 2009. (See Docket No. 134-27.)

    Under the civil law of Puerto Rico, a valid contract requires the consent of the parties; a definite object that forms the subject matter for the contract; and a cause for the creation of the obligation. P.R. Laws Ann. tit. 31, § 3391. The prestation or promise of a thing or services could constitute such cause. Id. § 3431. Under a synallagmatic (bilateral) contract, the parties form reciprocal obligations, each of which constitutes the cause of the other party's consent. See id. § 3052; Dopp v. HTP Corp., 755 F. Supp. 491, 498 (D.P.R. 1991).

    A contract must be construed in accordance with its literal meaning and the intention of the parties, as determined from the parties' acts contemporaneous and subsequent to the formation of the contract. P.R. Laws Ann. tit. 31, §§ 3471–3472. The parties are bound to strict adherence thereto under the principle of pacta sunt servanda. See id. § 2994.

    Under a reciprocal contract, a counterparty's default of its obligations effectively suspends a nonbreaching party's duty to tender performance. See id. § 3017 (providing that, once the counterparty has defaulted on its obligation, the nonbreaching party cannot incur default on its reciprocal obligation). If the breach affects the very essence of mutuality implicit in the contract, the nonbreaching party may commence an action for resolution of contract and demand either specific performance or rescission with indemnity. See id. § 3052; Dopp v. Pritzker, 38 F.3d 1239,

---

    [3] Even if issue preclusion does not apply, this court would adopt the same reasoning as Judge Seitz with respect to termination and reversion of trademark rights under the Agreement. (See Docket No. 133-23 at 14-17.)

**Civil No. 09-1509 (GAG/BJM)**                    10

1243-44 (1st Cir. 1994) (describing resolution as a remedy of last resort).

In the case at bar, paragraph 12(a)(iii) of the Agreement authorizes termination for Bart's failure to make any payments promised under paragraph 6(c).  (See Docket No. 133-6 at 13.) Paragraph 6(c) provides for payment of compensation by Bart "in consideration of all services rendered by Mercado and the use of the results thereof and all rights granted by Mercado to Bart." (See Docket No. 133-6 at 7 (emphasis added)).  In his Report and Recommendation, Judge McGiverin construes this provision as reciprocal obligations for Bart to tender monthly payments of $25,000 and for Mercado to perform "Additional Services" in exchange.  (See Docket No. 194 at 15.)  In response, Plaintiffs cite instances where Defendants' employees referenced payments to Mercado at various times as compensation and royalty for trademark rights.  (See Docket No. 207 at 13-15.)  However, such statements are consistent with the construction that payment is due for both the assignment of trademark rights and the prestation of services, such that Mercado's failure to perform would necessarily undermine the reciprocity of the Agreement.  See Pritzker, 38 F.3d at 1243-44.  In view of the express language of paragraph 6, which recites both the grant of rights and the performance in return for compensation, the court agrees with Judge McGiverin's interpretation. See P.R. Laws Ann. tit. 31, §§ 3471–3472.

Because Mercado has rendered no services to Bart under the Agreement since November 2006, Defendants need not tender payment to Mercado.  See id. § 3017.  Bereft of a proper basis for termination under paragraph 12, Mercado has once again failed to nullify the Agreement.  (See Docket No. 134-27.)  Accordingly, it appears to the court that Mercado's assignment of rights to Bart remains in effect and that Defendants, not Plaintiffs, hold rights in the Mark.  (See Docket No. 133-23 at 15-16.)

### d.    Interim Relief for Trademark Claims

The court now considers Plaintiffs' request for injunctive relief with respect to their claims under federal trademark law (see Docket No. 74).  As discussed above, Plaintiffs are unable to demonstrate their rights to the Mark.  Furthermore, both the Agreement and the Report and Recommendation define the Mark as synonymous with the name, "Walter Mercado." (See Docket

**Civil No. 09-1509 (GAG/BJM)**                    11

Nos. 133-6 at 3; 194 at 24.)  Thus, Plaintiffs' claim relating to Mercado's name is identical to their claim for the Mark and suffers from the same defect.  Because Plaintiffs have not established their entitlement to trademark protection for either the Mark or Mercado's name, they are unlikely to prevail on the merits with respect to these claims.  See Borinquen Biscuit, 443 F.3d at 116. Therefore, they are not entitled to preliminary injunctive relief as to the same.  See id. at 115.

### 2.    Right to Publicity

Plaintiffs also request an injunction against Defendants' use of Mercado's likeness and other indicia of his identity.  (See Docket No. 74.)  The court assumes, in arguendo, that these claims are not subsumed within Plaintiffs' claims for the Mark and Mercado's name.  The court nevertheless finds no legal authority establishing publicity rights under Puerto Rico civil law.  Accord Guedes v. Martínez, 131 F. Supp. 2d 272, 278 (D.P.R. 2001).  Accordingly, the court finds that Plaintiffs are unlikely to succeed at trial with respect to their claims for publicity rights.  Therefore, the court must deny Plaintiffs' motion for preliminary injunction in its entirety.[4]  See Borinquen Biscuit, 443 F.3d at 115.

### B.    Defendants' Cross-Motion for Preliminary Injunction

The court now considers Defendants' request to enjoin Plaintiffs from using the Mark and representing to others that Plaintiffs own the same (Docket No. 126).  To succeed on the merits, Defendants must demonstrate both that they are entitled to protection and that Plaintiffs' activities will likely cause consumer confusion.  See Borinquen Biscuit, 443 F.3d at 116.

As aforementioned, Plaintiffs have failed to establish their right to the Mark.  Because Plaintiffs' lack of trademark rights would necessarily imply Defendants' entitlement to the same, Defendants have demonstrated the likelihood of their right to trademark protection.  Moreover, as Judge McGiverin notes, Plaintiffs continue to use the Mark in commerce and associate their services

---

[4] Although Plaintiffs' motion also requests interim relief with respect to services other than astrological activities, the court declines to issue injunctive relief because there is no showing that Plaintiffs or Defendants use the Mark in relation to non-psychic services.  See Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir. 1990) (noting that claims are unripe for adjudication if they involve uncertain events that may never occur).

**Civil No. 09-1509 (GAG/BJM)**                    12

with the same.  (See Docket No. 194 at 24.)  Accordingly, there is an imminent risk of confusion among consumers as to which of the competing bunsinesses—Plaintiffs' or Defendants'— is properly associated with the Mark.  See Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 60-61 (1st Cir. 2008) (listing eight factors for likelihood of confusion, namely, (1) similarity of marks; (2) similarity of goods; (3) relationship between channels of trade; (4) relationship between advertising; (5) classes of prospective consumers; (6) evidence of actual confusion; (7) infringer's subjective intent in using mark; and (8) overall strength of trademark).  Such confusion would impair Defendants' marketing of their own astrological products and services.  Therefore, Defendants have established both the likelihood of their success on the merits for their trademark claim and their entitlement to preliminary injunctive relief.  See Borinquen Biscuit, 443 F.3d at 115-16.

**IV.    Conclusion**

For the reasons stated herein, the court hereby **ADOPTS IN PART** the Report and Recommendation (Docket No. 194).  The court **DENIES** Plaintiffs' motion for preliminary injunction (Docket No. 74).  Thus, the court **DENIES AS MOOT** Defendants' motion to strike Plaintiffs' motion for preliminary injunction (Docket No. 82).  The court **GRANTS** Defendants' cross-motion for preliminary injunction (Docket No. 126).

The court hereby **ORDERS** Plaintiffs to immediately cease and desist from using the Mark, "Walter Mercado," in relation to all forms of business enterprise, and from representing to third-parties that Plaintiffs own the Mark, pending the resolution of this case on the merits.

**SO ORDERED.**

In San Juan, Puerto Rico this 27th day of September, 2010.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge