1

2

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

3

4

5

6

7

8

9

10

WALTER MERCADO-SALINAS, et al.,

    Plaintiffs,

      v.

BART ENTERPRISES
INTERNATIONAL, LTD., et al.,

    Defendants.

**Civil No. 09-1509 (GAG)**

11

12

**OPINION AND ORDER**

13

14

15

16

17

18

19

    Plaintiffs Walter Mercado-Salinas ("Mercado") and Astromundo, Inc. (collectively "Plaintiffs") brought this case in the Puerto Rico Court of First Instance against Defendants Bart Enterprises International, LTD. ("Bart"), Walter International Productions, Inc., Waltervision, Inc., Waltervision Productions, Inc., Walter Mercado Radio Productions, Inc., Walter Mercado Enterprises, Corp., Arcane Creative LLC and Guillermo Bakula ("Bakula") (collectively "Defendants"). (See Docket Nos. 1 and 4.)  Defendants removed this case to the federal district court. (See Docket No. 1.)  Plaintiffs accuse Defendants of, *inter alia*, trademark infringement and unfair competition in violation of federal law.

20

21

22

23

    Presently before the court is Defendants' motion for partial dismissal (Docket No. 311).  Plaintiffs opposed this motion (Docket No. 325).  By leave of the court, Defendants filed a reply brief (Docket No. 337), which Plaintiffs opposed by sur-reply (Docket No. 347).  After reviewing these submissions and the pertinent law, the court **DENIES** Defendants' motion at Docket No. 311.

24

25

**I.     Standard of Review**

26

27

28

    "The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief."  Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted).  "This short and plain statement

**Civil No. 09-1509 (GAG)**                                2

need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." Id. at 555. In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' -'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

**II.     Factual and Procedural Background**

Given that prior opinions on record (Docket Nos. 57, 194 and 220) amply set forth the background of this case, only the facts relevant to the instant disposition are hereby recapitulated.

On August 4, 1995, Mercado entered into a contract with Bart ("the Agreement") (Docket No. 133-6). The Agreement included, *inter alia*, an alleged assignment by Mercado to Bart of the right to the common-law trademark "Walter Mercado" (the "Mark") arising from certain materials featuring Mercado, the Mark, and Mercado's name and likeness. The Agreement provided for monetary compensation for Mercado's services.

The Agreement contains two different terms: (1) the term for which Mercado was obligated to provide services to Bart (the "Additional Services Term"), consisting of ten years plus optional two-year extensions, and (2) the term applicable to the assignment of the Mark and other rights (the "Term"), which is defined as being "in perpetuity . . . subject to the provisions of paragraph 12."

1  **Civil No. 09-1509 (GAG)**                    3

2  (See Docket No. 133-6 at 5.)  Paragraph 12 of the Agreement allows the parties to terminate the

3  Agreement upon the occurrence of specific conditions.  (See Docket No. 133-6 at 13-14.)

4  Mercado attempted to terminate the Agreement in November 2006 and stopped rendering

5  services to Bart.  (See Docket No. 133-23 at 5.)  At that time, Bart stopped paying Mercado under

6  the Agreement.  (See Docket No. 194 at 7.)

7  On January 17, 2007, Defendants filed suit against Plaintiffs in the U.S. District Court for

8  the Southern District of Florida, alleging breach of contract by Plaintiffs.  (See Docket No. 133-7.)

9  On February 7, 2007, Plaintiffs filed a separate suit against Defendants in the U.S. District Court for

10  the District of Puerto Rico, seeking, *inter alia*, an injunction to protect their federal trademark rights.

11  (See Docket No. 133-8.)  This court transferred Plaintiffs' case to the Southern District of Florida,

12  which consolidated the case with Defendants' case in that court.  In granting partial summary

13  judgment, the Southern District Court of Florida found that the Agreement could be terminated, and

14  that Mercado's assignment of his right to the Mark and his likeness would revert to him upon valid

15  termination.  (See Docket No. 133-23 at 15-16.)

16  On January 26, 2009, the jury rendered a special verdict in that case, finding that Mercado

17  did not properly terminate the Agreement.  (See Docket Nos. 133-25; 133-26.)  An amended

18  judgment concluded that the Agreement was still in force because Mercado had failed to terminate

19  the Agreement pursuant the terms in the contract.  (See Docket No. 134-12 at 22.)  As Bart retained

20  its rights to the Mark and Mercado's likeness, the presiding judge dismissed Mercado's trademark

21  infringement claim as moot.  (See id.)

22  In a letter dated May 15, 2009, Mercado declared he was terminating the Agreement pursuant

23  to Paragraph 12 because of Bart's failure to pay him a particular amount previously requested.  (See

24  Docket No. 134-27.)

25  Plaintiffs filed the instant complaint against Defendants on May 15, 2009 in the Puerto Rico

26  Court of First Instance claiming protection of trademark rights.  (See Docket Nos. 1-4.)  Defendants

27  removed this case to the federal district court on June 8, 2009.  (See Docket No. 1.)  An amended

28

**Civil No. 09-1509 (GAG)**                     4

complaint was filed on December 30, 2010 (Docket No. 282-1).  On February 22, 2011, Defendants

filed a motion for partial dismissal of the amended complaint (Docket No. 311) under Federal Rule

of Civil Procedure 12(b)(6) on the grounds that: (1) Plaintiffs' claim for piercing the corporate veil

is premature; (2) Plaintiffs fail to state a claim for piercing of the corporate veil; and (3) Plaintiffs'

claims regarding Mercado's name and likeness are barred by the doctrines of *res judicata* and

estoppel.  Plaintiffs responded with a motion in opposition (Docket No. 325).  Defendants replied

(Docket No. 337) and Plaintiffs sur-replied (Docket No. 347).

### III.    Discussion

#### A.    Piercing the Corporate Veil

Parties have made their arguments under Florida law.  (See Docket Nos. 311 at 4; 325 at 4.)

In a diversity case, the court "applies the choice-of-law rules of the forum state."  Wadsworth, Inc.

v. Schwarz-Nin, 951 F. Supp. 314, 320 (D.P.R. 1996) (citing Klaxon Co. v. Stentor Electric Mfg.

Co., 313 U.S. 487, 496 (1941)).  "In Puerto Rico, courts have applied the 'most significant contacts'

test in cases involving tortious damages, contractual breaches, and the judicial process of piercing

the corporate veil."  Goya Foods, Inc. v. Unanue-Casal, 982 F. Supp. 103, 107 (D.P.R. 1997)

(citations omitted).  The parties' place of incorporation and business is among the contacts to

consider.  Id. (citing Wadsworth, 951 F. Supp. at 321-22).

Plaintiffs allege that "[a]ll of the defendant corporations are *alter egos* of [co-defendant] Mr.

Bakula."  (See Docket No. 282-1 at 3 ¶ 15.)  All but one of the corporate defendants in the present

complaint are organized under the laws of Florida and have their principal place of business in

Miami, Florida.[1]  (See Docket Nos. 282-1 ¶¶ 7-13; 356 ¶¶ 7-13.)  From these facts, the court

understands that Florida has more significant contacts with the matter at hand than any other possible

jurisdiction.  Accordingly, Florida law will govern the determinations regarding the piercing of the

corporate veil claims.

---

[1] Bart Enterprises International, LTD. is a corporation organized in the Bahamas, with its principal place of business in Nassau, Bahamas.  (See Docket Nos. 282-1 ¶ 7; 356 ¶ 7.)

**Civil No. 09-1509 (GAG)**                                    5

### 1.      Ripeness

Defendants contend that Plaintiffs' piercing of the corporate veil claims are premature because they are contingent upon an eventual judgment against the defendant corporations and are typically reserved for supplementary proceedings. (See Docket No. 311 at 4-5.) In their opposition, Plaintiffs emphasize the fact that Defendants do not cite to any case law requiring the dismissal of piercing the corporate veil allegations. (See Docket No. 325 at 5.) They contend that "[a]lthough these claims may be brought in aid of execution of a judgment rendered against a corporation, availability of such proceedings does not, as a legal matter, allow a court to dismiss such claims or allegations as premature." (See id.)

Having reviewed Defendants' motion for partial dismissal (Docket No. 311) and their reply to Plaintiffs' opposition (Docket No. 337), the court cannot find any legal authority cited to support dismissal of Plaintiffs' piercing of the corporate veil claims at this stage of the proceedings. In their motion for partial dismissal, Defendants cite to Ally v. Naim, 581 So. 2d 961 (Fla. Dist. Ct. App. 1991). (See Docket No. 311 at 4.) The court agrees with Plaintiffs that "[n]owhere in that case . . . does the court rule that piercing of the corporate veil claims are in any way reserved for supplementary proceedings or that they are premature when brought in a suit filed against both the corporation and the individual shareholders." (See Docket No. 325 at 5.) Defendants' reply (Docket No. 337) cites additional legal authority regarding the actual piercing of the corporate veil, but none supports their contention.

On the other hand, Plaintiffs cite to three instances where courts have entertained these claims in breach of contract and personal injury actions.[2] (See Docket No. 325 at 6.) The court also

---

[2] Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290 (11th Cir. 1998) (entertaining a piercing of the corporate veil claim in an action for breach of contract, fraud, racketeering, and tortious interference); Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114 (Fla. 1984) (entertaining a piercing of the corporate veil claim in an action to recover damages for personal injuries); Kelly v. Am. Precision Indus., Inc., 438 So. 2d 29 (Fla. Dist. Ct. App. 1983) (addressing a piercing of the corporate veil claim in a personal injury action).

**Civil No. 09-1509 (GAG)**                                    6

notes that Florida's federal district courts have entertained piercing of the corporate veil allegations

prior to a judgment against the corporation whose use of the corporate form has been questioned.

See Traffic Jam Events, LLC v. Cortes, 2009 WL 2175640 at *3 (M.D. Fla. Jul. 27, 2009)

(considering whether an amended complaint for, *inter alia*, trademark infringement and breach of

contract contained sufficient factual allegations to make a corporate officer personally liable through

the piercing of the corporate veil); MeterLogic, Inc. v. Copier Solutions, Inc., 126 F. Supp. 2d 1346,

1357 (S.D. Fla. 2000) (entertaining a piercing of the corporate veil claim as an additional allegation

to a breach of contract complaint in an action filed against a defendant corporation).

Provided with no legal authority to support Defendants' assertions that Plaintiffs' piercing

of the corporate veil allegations should be dismissed as premature, the court declines to consider this

argument. See U.S. v. de Jesus, 108 F. Supp. 2d 68, 70 (D.P.R. 2000) (citing Cruz-Erazo v. Rivera-

Montañez, 212 F.3d 617, 622 n.3 (1st Cir. 2000)) (considering lack of legal authority in denying a

motion to dismiss). Defendants' motion to dismiss Plaintiffs' piercing of the corporate veil

allegations as premature is **DENIED**.

### 2.    Failure to state a claim

Defendants contend that Plaintiffs have not alleged a basis for piercing the corporate veil to

establish personal liability on the part of Bakula. (See Docket No. 311 at 5-6.) They argue that

Plaintiffs have not pled "the fraudulent use of the corporation itself." (See Docket No. 311 at 7.)

Under Florida law, a cause of action must plead "instrumentality and improper conduct" to

pierce the corporate veil. Morris v. Bischoff, 1997 WL 128114 at *8 (M.D. Fla. Mar. 4, 1997)

(quoting Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1117 (Fla. 1984)). "The corporate

veil will not be penetrated . . . unless it is shown that the corporation was organized or employed to

mislead creditors or work a fraud upon them." Morris, 1997 WL 128114 at *8 (citations omitted)

(internal quotation marks omitted). A creditor cannot question the corporate existence if he has not

pleaded and proved "that the corporation was organized for an illegal purpose or that its members

fraudulently used the corporation as a means of evading liability with respect to a transaction that

was, in truth, personal and not corporate." Al-Babtain v. Banoub, 2007 WL 2774210 at *2 (M.D.

**Civil No. 09-1509 (GAG)**                    7

Fla. Sept. 24, 2007) (citing <u>Dania Jai-Alai Palace</u>, 450 So. 2d at 1120).

> Plaintiffs amended complaint alleges:

> All of the defendant corporations are *alter egos* of Mr. Bakula. The relationship between Mr. Bakula and the corporations is completely personalized. Mr. Bakula directs and manages all of the [d]efendant corporations' activities and uses the corporate names at his pleasure. No corporate formalities are currently being followed by any of the defendant corporations. There are no financial statements, corporate books nor formal corporate records. The defendant corporations have not filed tax returns since the year 2005. The [d]efendant corporations' banking statements have no correlation with informal financial reports that are personally prepared by Mr. Bakula with no supporting evidence. There is no formal payroll for each separate corporation. Purported "employees" and suppliers are randomly paid with Mr. Bakula's personal funds or the funds of the particular corporation that happens to have the funds necessary to pay at the time. Moreover, Mr. Bakula co-mingles his personal funds with the defendant corporations' funds. Funds purportedly paid to the corporations are never deposited in the [corporations'] banking accounts. Therefore, the Court should disregard the corporate entities and hold Mr. Bakula personally liable for al debts and illegal actions herein alleged.

(<u>See</u> Docket No. 282-1 ¶ 15) (emphasis in original).

In light of the these specifically alleged facts, the court finds that Plaintiffs have alleged sufficient facts to survive a 12(b)(6) motion to dismiss. These allegations are sufficient to satisfy the pleading requirements as to the issue of piercing the corporate veil. <u>See</u> <u>Raber v. Osprey Alaska, Inc.</u>, 187 F.R.D. 675, 679 (M.D. Fla. 1999) (finding that dismissal under FED.R.CIV.P. 12(b)(6) was not warranted because plaintiffs had alleged that the corporate defendant was the mere *alter ego* of individual defendants and that the individual defendants had commingled personal and corporate funds, had not complied with corporate requirements, and had acted fraudulently regarding the receipt of corporate funds); <u>Morris</u>, 1997 WL 128114 at *8 (finding allegations that corporations were the instrumentality of the defendant and that the defendant had "engaged in such improper conduct as: failing to observe corporate formalities; commingling the funds of the corporations with the funds of other corporations and with his own funds; using the assets of the corporations for his own personal use; failing to adequately capitalize the corporations; and using the corporate form to avoid liability" were "sufficient to satisfy the pleading requirements as to the issue of piercing the corporate veil"). Accordingly, the court **DENIES** Defendants' motion to dismiss Plaintiffs' piercing of the corporate veil allegations for failure to state a claim.

**Civil No. 09-1509 (GAG)**                                    8

### B.   *Res Judicata* and Collateral Estoppel

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action, while under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Mala v. Palmer, 755 F. Supp. 2d 386, 390-91 (D.P.R. 2010) (citations omitted) (internal quotation marks omitted).

Res judicata requires that: (1) there is a final judgment on the merits in an earlier proceeding; (2) the parties in the prior and the subsequent action are sufficiently identical; and (3) the causes of action in the two cases are sufficiently identical. Breneman v. U.S. ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004) (citations omitted). "The test to determine the identity of two causes of action for purposes of *res judicata* is whether the essential or operative facts are the same in both cases." Cooper v. Principi, 71 Fed. Appx. 73, 75 (1st Cir. 2003) (citing Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998)).

"Collateral estoppel may be applied where '(1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment.'" Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 770 (1st Cir. 2010) (quoting Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86 (1st Cir. 2007)).

The court notes that *res judicata* and collateral estoppel have been previously addressed by Magistrate Judge Bruce J. McGiverin in his Report and Recommendation (Docket No. 194) and the court reiterates some of his findings.[3]

---

[3] Furthermore, Judge McGiverin –on motions to transfer and remand– had already found that "[t]he instant action basically picks up where the [Florida case] left off.  It alleges that the Agreement has been nullified due to defendants' non-payment since November 2006." (See Docket No. 57 at 7.)  Defendants were not judged to have failed to make payments or to have breached the Agreement as of November 2006. (See Docket No. 57 at 7.)  "[T]he issue of trademark ownership

**Civil No. 09-1509 (GAG)**                                9

Defendants assert that Plaintiffs' name and likeness claims, as well as the license claim, are

barred by the doctrines of *res judicata* and estoppel because they are based on the same "operative"[4]

factual issues as the case in the Southern District Court of Florida (the "Florida case") and could

have been brought in that litigation.  (See Docket No. 311 at 9-10.)

Plaintiffs counter that litigation in the Florida case dealt exclusively with allegations

regarding Defendants' breach of the Agreement for lack of payment prior to November 2006 and

Mercado's failure to provide services as to that date.  (See Docket No. 325 at 12.)  They aver that

the claims in the amended complaint address Mercado's termination of the Agreement in May of

2009, "and pertains to Defendants' not consented use of Walter Mercado's image and likeness in

various separate, and different business endeavors subsequent to June 2007 **and up to the present**–

period after which the Florida court adjudged that Walter Mercado had no duty to render services

for [Defendants]."  (See Docket No. 325 at 12) (emphasis in original).  Plaintiffs further contend that

the "issue of who is the owner of the Mercado trademark as of today and the scope of the trademark

and publicity rights assigned, **has not been decided by either this [c]ourt or the Florida Court**."

(See Docket No. 325 at 12) (emphasis in original).  The court agrees.

The Florida case went to trial on "claims for breach of contract, a declaratory action as to

whether the contract was properly terminated, whether fees and commissions were owed to

Mercado, breach of fiduciary duty, injunctive relief, and trademark infringement."  (See Docket No.

134-12 at 22.)  The issues of the parties' rights over the Mark and Mercado's name and likeness

were never decided on the merits in that litigation.  The district court in the Florida case found itself

---

was not and will not be adjudicated in the Consolidated Florida Cases, these claims stand or fall on
who currently has the rights to the Walter Mercado name, mark, and image –which in turn depends
entirely on the Agreement."  (See Docket No. 57 at 15-6.)

[4] According to Defendants, "Plaintiffs claims arise from a common nucleus of operative facts
. . . because we are dealing with claims for breach and the exercise of rights and fulfilment of
obligations under the same Agreement."  (See Docket No. 311 at 9.)

**Civil No. 09-1509 (GAG)**                    10

without jurisdiction to address questions regarding these issues.[5]  Furthermore, after the jury found

that Mercado had not properly terminated the Agreement in 2006, the Florida court found the

trademark infringement claim to be moot and, thus, that was also never tried.[6]

Plaintiffs' claims in the present case are not based on the same factual issues as those decided

in the Florida case because they pertain to a different time period.  Plaintiffs' claims arise out of

conduct that occurred after litigation in the Florida case began in early 2007, so the claims could not

have been included in the prior litigation.  (See Docket No. 194 at 17.)  Any argument as to the

character of the grant of rights –whether it was an outright assignment or a license– would not have

been ripe until the expiration of the Additional Services Term in June 2007, since Defendants had

use of the Mark, name and likeness until the end of that period.  Additionally, the term applicable

to the assignment of the Mark ends upon a valid termination of the Agreement, which Plaintiffs

argue occurred in 2009.  Consequently, the court finds no merit as to the argument that Plaintiffs

could have brought their claims regarding the use of Mercado's name and likeness in the Florida

case.  The claims here pertain largely to Defendants' use of the Mark, name, and likeness after the

end of the Additional Services Term –which falls outside the scope of the Agreement.  Thus, the

claims could not have been ripe when the Florida case began.

After reviewing the record and the amended complaint, the court does not find Plaintiffs'

claims to be barred by the doctrines of *res judicata* and/or collateral estoppel.  Accordingly, the court

**DENIES** Defendants' motion to dismiss on these grounds.

---

[5] "[B]ased on the Court's review of the parties' subsequently filed briefs, the pleadings, and
the complete record, it is apparent that there is no case or controversy pending before the Court by
which the Court could address the trademark issue."  (See Docket No. 134-12 at 21.)  The court
understands "the trademark issue" to indicate "Mercado's common-law trademark in his name and
likeness" as it is referred to in the outset of the amended judgment.  (See Docket No. 134-12 at 2.)

[6] According to the Florida court, once the jury had found that Mercado had not terminated
the contract, "the claim for trademark infringement became moot because . . . the trademark rights
revert back to Mercado upon a valid termination of the agreement."  (See Docket No. 134-12 at 22.)

**Civil No. 09-1509 (GAG)**                              11

    **IV.     Conclusion**

    For the reasons set forth above, the court **DENIES** Defendants' partial motion to dismiss at

Docket No. 311.


    **SO ORDERED.**

    In San Juan, Puerto Rico this 1st day of August, 2011.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge
