# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**WALTER MERCADO-SALINAS, et al.,**

    **Plaintiffs,**

    v.                                                                     Civil No. 09-1509 (GAG)

**BART ENTERPRISES INTERNATIONAL, LTD., et al.,**

    **Defendants.**

## OPINION AND ORDER

Walter Mercado-Salinas ("Mercado") and Astromundo, Inc. (collectively "Plaintiffs") brought this case in the Puerto Rico Court of First Instance against Bart Enterprises International, LTD. ("Bart"), Walter International Productions, Inc., Waltervision, Inc., Waltervision Productions, Inc. ("Waltervision Productions"), Walter Mercado Radio Productions, Inc., Walter Mercado Enterprises, Corp., Arcane Creative LLC ("Arcane") and Guillermo Bakula ("Bakula") (collectively "Defendants"). (See Docket Nos. 1 and 4.) Defendants removed this case to the federal district court. (See Docket No. 1.)

The parties have filed cross motions for partial summary judgment (Docket Nos. 374 & 383), and have submitted statements of uncontested material facts (Docket Nos. 375 & 372). They have also duly opposed their opponents' motions for summary disposition (Docket No. 407 & 403) and replied (Docket No. 417 & 419).[1] After reviewing these submissions and the pertinent law, the court

---

[1] Plaintiffs filed a sur-reply to Defendants' reply to Plaintiffs' opposition to Defendants' motion for partial summary judgment (Docket No. 424).

**Civil No. 09-1509 (GAG)**                    2

**GRANTS** Defendants' motion for partial summary judgment at Docket No. 374 and **DENIES** Plaintiffs' motion for partial summary judgment at Docket No. 383.

### I.  Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id.

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The burden then shifts to the non-movant to establish the existence of at least one genuine and material fact in dispute. Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001) (citing Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted).

The non-moving party must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The non-movant "cannot rest upon mere allegation or denial of the pleadings." Fed. Deposit Ins. Corp. v. Municipality of Ponce, 904 F.2d 740, 742-43 (1st Cir. 1990) (citing FED.R.CIV.P. 56)). That is, "[t]o defeat a motion for summary judgment, evidence offered by the non-movant must be significantly probative of specific facts." Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citations omitted) (internal quotation marks omitted). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion." Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 15 (1st Cir. 2007)

(citations omitted). Rather, "the nonmovant must present definite, competent evidence to rebut the motion." Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993) (citations omitted) (internal quotation marks omitted).

If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. Martinez-Rodriguez v. Guevara, 597 F.3d 413, 419 (1st Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

"Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010) (citing Adria Int'l Group, Inc. v. Ferré Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001)) (internal quotation marks omitted). Although each motion for summary judgment must be decided on its own merits, each motion need not be considered in a vacuum. Wells Real Estate Inv. Trust II, Inc., 615 F.3d at 51 (quoting P.R. American Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 133 (1st Cir. 2010)) (internal quotation marks omitted). "Where, as here, cross-motions for summary judgment are filed simultaneously, or nearly so, the district court ordinarily should consider the two motions at the same time, applying the same standards to each motion." Wells Real Estate Inv. Trust II, Inc., 615 F.3d at 51 (quoting P.R. American Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 133 (1st Cir. 2010)) (internal quotation marks omitted).

**II.     Factual and Procedural Background**

Given that prior opinions on record (Docket Nos. 57, 194, 220 and 369) amply set forth the background of this case, only the facts relevant to the instant disposition are hereby recapitulated.

Mercado is a well-known psychic and astrologer. On August 4, 1995, Mercado entered into a contract with Bart ("the Agreement") (Docket No. 375-1). As part of the Agreement, Mercado

**Civil No. 09-1509 (GAG)**                          4

granted Bart certain rights to the "Walter Mercado" trademark (the "Mark"), as well as Mercado's name and likeness, "during the Term and throughout the Territory" of the Agreement.

Under the Agreement, Bart would develop and distribute materials and products related to Mercado's psychic and astrological services. Mercado agreed to provide additional psychic and astrological services to Bart during an "Additional Services Period." (See Docket No. 375-1 at 6 ¶¶ 6(b)(i) & (ii).) In return, the Agreement provides for monetary compensation for Mercado's services. According to the Agreement, it in no way prohibits or restricts Mercado "from conducting his present business endeavors consisting of radio, newspaper, magazines and personal consultation related to psychic activities[,]" for his personal benefit. (See Docket No. 375-1 at 8 ¶ 6(c)(v).)

### A. Florida Litigation

In the fall of 2006, Mercado stopped rendering services as provided under the Agreement and failed to appear for scheduled appearances. Mercado-Salinas v. Bart Enterprises Int'l, Ltd., --- F.3d ---, 2011 WL 6350535 at *3 (1st Cir. Dec. 20, 2011). In November 2006, Bart stopped Mercado's compensation payments under the Agreement. See id. Mercado formally attempted to terminate the Agreement in a letter dated November 22, 2006, citing Bart's failure to pay Mercado compensation for the use of the Mark. See id.

On January 17, 2007, Defendants filed suit against Plaintiffs in the U.S. District Court for the Southern District of Florida (the "Florida Court"), alleging breach of contract and tortious interference with Bart's third-party contracts. (See Docket No. 133-7.) On February 7, 2007, Plaintiffs filed a separate suit against Defendants in the U.S. District Court for the District of Puerto Rico seeking an injunction to protect their federal trademark rights. (See Docket No. 133-8.) On June 26, 2007, Plaintiffs filed a counterclaim to Defendants' complaint in the Florida Court for breach of contract, breach of fiduciary duty, breach of the covenant of good faith, violation of copyright and trademark laws, unjust enrichment. (See Docket No. 133-9.) On June 16, 2008, Plaintiffs' complaint in the District of Puerto Rico was transferred to the Southern District of Florida. (See Docket No. 133-2 at 2 ¶ 18.) The two cases were consolidated for trial purposes. (See Docket No. 44-2 at 1 n.1.)

On cross-motions for summary judgment, the Florida Court found the Agreement is valid under Puerto Rico law. (See Docket No. 133-23 at 6-8.) It also concluded the Agreement contains two different durational periods: (1) the period for which Mercado was obligated to provide personal services to Bart (the "Additional Services Term"), consisting of ten years plus optional two-year extensions st Bart's discretion, and (2) the period applicable to the assignment of the Mark and other rights (the "Term"), which is defined as being "in perpetuity . . . subject to the provisions of paragraph 12." (See Docket No. 133-23 at 7.) Because the Mark was "irrevocably assign[ed] to Bart . . . during the Term" and because "the Term of the Agreement ends if Bart or Mercado exercise their rights to terminate the Agreement," the Florida court found all rights in Preexisting Materials and in the Mark would revert to Mercado upon valid termination. (See Docket No. 133-23 at 15-16.)

On January 26, 2009, the jury rendered a special verdict finding Mercado had improperly terminated the Agreement. (See Docket No. 133-25.) The jury also found Mercado had breached the Agreement. (See Docket No. 133-26.) Judgment was entered in favor of Bart on February 4, 2009. (See Docket No. 133-27.) Subsequent to the filing of motions to alter or amend judgment, the Florida Court concluded the Agreement was still in force because Mercado had failed to terminate the Agreement pursuant the terms in the contract. (See Docket No. 134-12 at 22.) Because Bart retained its rights to the Mark and Mercado's likeness, the presiding judge dismissed Mercado's trademark infringement claim as moot. (See id.)

**B.     The Present Controversy**

Following the Florida litigation, Mercado sent Bart a letter dated March 20, 2009, demanding payment within fifteen days of $25,000 per month for the twenty-seven months that had elapsed between November 2006 and January 2009, amounting to a total of $675,000. (See Docket No. 134-25.) The letter asserted that "the $25,000 per month [is] due and payable pursuant to clause 6(c)(i)" of the Agreement, and that "[t]he obligation to pay such amounts is independent of any service provided by Mr. Mercado." (See Docket No. 134-25 at 2.) The letter further stated Mercado reserved the right to declare the Agreement null and void pursuant to clause 12 of the Agreement if payment in full was not received within fifteen days of receipt. (See id.) Bart notified Mercado on March 30, 2009 that it would not pay the requested compensation because no compensation was

**Civil No. 09-1509 (GAG)**                                              6

due since Mercado ceased providing services. (See Docket No. 134-26.) In doing so, Bart asserted its right to the Mark and demanded Mercado desist using the Mark for himself. (See id.) In another letter to Bart dated May 15, 2009, Mercado declared the termination of the Agreement pursuant to Paragraph 12 because of Bart's failure to pay the amount requested in the March 20, 2009 letter. (See Docket No. 134-27.)

Plaintiffs filed the instant complaint against Defendants on May 15, 2009 in the Puerto Rico Court of First Instance claiming breach of contract, trademark and publicity rights infringement, and damages for the unauthorized used of the Mark, name, likeness, and other indicia of identity. (See Docket Nos. 1-4.) Defendants removed this case to the federal district court on June 8, 2009. (See Docket No. 1.)

Cross-motions for preliminary injunction relief were filed, seeking to prevent the other from using the Mark. (See Docket Nos. 74 & 126.) Finding that Mercado had not established he was entitled to trademark protection, Plaintiffs' request for preliminary injunctive relief was denied and Defendants' was granted. (See Docket No. 220.) Mercado was barred from "(1) using the [Mark] in relation to all forms of business enterprise, except for business arrangements that commenced prior to June 7, 1995, and (2) representing to third parties that Plaintiffs own the Mark." (See Docket No. 234.) The First Circuit affirmed the district court's decision to grant Bart's preliminary injunction request under an abuse of discretion standard. Mercado-Salinas v. Bart Enterprises Int'l, Ltd., No. 10-2359, 2011 WL 6350535 (1st Cir. Dec. 20, 2011).

An amended complaint was filed on December 30, 2010 (Docket No. 282-1). Defendants answered the amended complaint and filed a counterclaim seeking declaratory relief for ownership of the Mark, as well as damages for trademark infringement (Docket No. 356). On February 22, 2011, Defendants filed a motion for partial dismissal of the amended complaint (Docket No. 311) under Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) Plaintiffs' claim for piercing the corporate veil was premature; (2) Plaintiffs failed to state a claim for piercing of the corporate veil; and (3) Plaintiffs' claims regarding Mercado's name and likeness were barred by the doctrines of res judicata and collateral estoppel. The court denied the motion (Docket No. 369).

**Civil No. 09-1509 (GAG)**                              7

On August 10, 2011, both parties moved for partial summary judgment (Docket Nos. 374 and 383, respectively). Defendants move for partial summary judgment on Plaintiffs' claims of trademark infringement and ownership of the Mark for astrological and psychic services. (See Docket No. 374 at 4.) Plaintiffs opposed Defendants' motion (Docket No. 407) incorporating the arguments set forth in their motion for partial summary judgment. By leave of the court, Defendants filed a reply brief (Docket No. 417), which Plaintiffs opposed by sur-reply (Docket No. 424).

Plaintiffs also move for partial summary judgment on claims for trademark infringement, breach of contract and breach of publicity rights, among others. (See Docket No. 383.) Correspondingly, Defendants filed an opposition to Plaintiffs' motion for partial summary judgment (Docket No. 403), which Plaintiffs replied (Docket No. 419).

**III.    Discussion**

The court recognizes its preliminary interpretation of the Agreement (Docket No. 220) is not binding as to the meaning of the Agreement for a determination on the merits of the trademark infringement claims. "[A] court's conclusions as to the merits of the issues presented on preliminary injunction are to be understood as statements of probable outcomes." Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991). Because preliminary injunctions require the issues be presented and decided in an expeditious manner, the factual findings and legal conclusions made in the course of granting or denying a preliminary injunction are not binding as to the merits of the claim. See Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981).

**A.    Defendants' Motion for Partial Summary Judgment (Docket No. 374)**

Defendants move for partial summary judgment on Plaintiffs' claims of trademark infringement. (See Docket No. 374 at 4.) Defendants request the court declare Bart the rightful owner of the Mark for astrological and psychic services pursuant to the assignment of rights contained in the Agreement and find Plaintiffs have infringed on its trademark rights. (See Docket No. 374 at 4-5.) However, Plaintiffs contend Mercado validly terminated the Agreement in April 2009 and the assigned rights reverted back to him, thus, Mercado is the "current full owner" of the Mark. (See Docket No. 407 at 6.) Furthermore, Plaintiffs contend the Agreement does not provide

**Civil No. 09-1509 (GAG)**                               8

a full assignment of trademark rights, inasmuch as the rights granted therein were subject to certain limitations. (See Docket No. 407 at 10.)

### 1.     Ownership of the Mark

Because trademark ownership is essential to the claims of trademark infringement, the court will address this issue first. See Venture Tape Corp., v McGills Glass Warehouse, 540 F.3d 56, 60 (1st Cir. 2008) (trademark infringement claim under Lanham Act requires trademark holder prove: (1) it owns and uses the mark in question; (2) another company or business used the same or similar mark without the holder's permission; and (3) the infringing use of the mark is likely to confuse consumers). Both Plaintiffs and Defendants claim ownership of the Mark, while disputing the other's ownership to the same. The parties assert there is no genuine issue of material fact as to ownership of the Mark. Because the contracting parties agreed the Agreement is "governed by and [should be] construed in accordance with the laws of Puerto Rico," the court interprets it under such. (See Docket No. 375-1 at 19 ¶ 20(d).)

Contracting parties will be bound by their contractual obligations, which must be fulfilled in accordance with the terms of the agreement. P.R. Laws Ann. tit. 31, § 2994. If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, then the literal terms of the contract will be observed. P.R. Laws Ann. tit. 31, § 3471. "Under Puerto Rican law, an agreement is clear when it can be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation." Yordan v. Burleigh Point, Ltd., 552 F. Supp. 2d 200, 203 (D.P.R. 2007) (citations omitted) (internal quotation marks omitted). The intention of the contracting parties shall prevail if the words in the contract appear contrary to the parties' evident intention. Id. Attention should be paid to the actions of the contracting parties, during and after entering into the agreement, when assessing their intentions. P.R. Laws Ann. tit. 31, § 3472. "When interpreting a contract under Puerto Rico law, its stipulations 'should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of them together.'" Yordan, 552 F. Supp. 2d at 204 (quoting P.R. Laws Ann. tit. 31, § 3475). "When a contract is ambiguous, extrinsic evidence may be considered to determine the intention of the parties." Yordan, 552 F. Supp. 2d at 204 (citing Innovation Marketing v. Tuffcare, Inc., 31 F.

**Civil No. 09-1509 (GAG)**                              9

Supp. 2d 218, 222-23 (D.P.R. 1998); <u>Exec. Leasing Corp. v. Banco Popular de Puerto Rico</u>, 48 F.3d 66, 69 (1st Cir. 1995) ("[T]o consider extrinsic evidence at all, the court must first find the relevant terms of the agreement unclear.")).

### a. Assignment of the Mark

It is clear by the language of the Agreement, Mercado assigned all rights in and to the Mark to Bart. Like any kind of property, a trademark can be bought, sold and licensed, "[b]ut because the 'property' parameters of marks are uniquely defined, great care must be taken in attempting to transfer such rights." 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:1 (4th ed. 2011) (hereinafter, "McCarthy"). A trademark cannot be sold or assigned apart from the good will it symbolizes. 3 McCarthy § 18:2. In other words, rights to a trademark cannot be transferred in gross –separate from the business with which it is associated. <u>May v. Goodyear Tire & Rubber Co.</u>, 10 F. Supp. 249, 257 (D. Mass. 1935). "[A] personal name used as a trademark may be expressly assigned to another along with the good will symbolized by the mark." 3 McCarthy § 18:32.

In the case at bar, the Agreement, read as a whole, assigns to Bart full rights to the Mark. It is clear and unambiguous. The language in the Agreement states Mercado assigned to Bart, all rights in and to the Mark, including the goodwill it symbolizes. The specific language of the Agreement reads,

> Mercado hereby irrevocably assigns to Bart throughout the Territory during the Term, all right, title and interest in and to the Mark, together with that part of the goodwill of Mercado's business connected with and symbolized by said Mark, for use in connection with the Pre-existing Materials and the New Materials, if any. Such assignment includes but is not limited to the right to use the Mark in connection with Preexisting Materials and the New Materials in any and all media now known or hereafter developed . . . , the right to merchandise and the right to utilize the Mark in all advertising, promotion and publicity created in connection therewith.

(<u>See</u> Docket No. 375-1 at 4 ¶ 2(b).) Additionally, the Agreement stipulates that Bart has the right to register the Mark in its own name as an owner of the trademark, as well as the right to enforce its rights in court:

> Bart shall have all rights in the Mark which are afforded to owners of trademarks and service marks, including but not limited to the right to seek and obtain trademark protection and/or registration of the Mark in its name, and the right to enforce or defend Bart's rights against third parties.

(See Docket No. 375-1 at ¶ 2(c).)  As the court expressed in its preliminary injunction ruling, this language connotes the assignment of full rights to the Mark, rather than granting a mere license.  See Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 159 n.6 (1st Cir. 1977) (defining licensee as person without exclusive right to sell product associated with trademark, and who cannot sue on his own behalf).

Furthermore, the Agreement itself is written in a manner that distinguishes between assignments and licenses, depending on the parties' intent.  In the "Grants of Rights" section, the Agreement not only *assigns* to Bart "all right, title and interest" to the Mark, but also *assigns* to Bart, "all right, title and interest, including all copyrights in and to all Preexisting Materials." (See Docket No. 375-1 at 2 ¶ 1(a).)  Later, the Agreement is careful not to use the term "assigns" or any variation thereof in other provisions, but instead the Agreement refers to Mercado granting "right[s]" and "license[s]."  For example, Mercado "*grants* to Bart the exclusive *right* and *license* . . . to develop, produce, distribute and copyright in its own name new materials, in any language, relating to Mercado's psychic and astrological services." (See Docket No. 375-1 at 3 ¶ 1(b)) (emphasis added).  Mercado also "*grants* to Bart the *right* and *license* . . . to use Mercado's performance, name, signature, photographs, voice, picture, likeness, or other indicia of his identity." (See Docket No. 375-1 at 5 ¶ 3(b)) (emphasis added).  Because the Agreement makes use of both the term 'assigns' and 'licenses' in separate provisions, the court interprets the Agreement as assigning certain rights, while only licensing others.

### b.      Reversion of Assigned Rights

Pursuant to the Agreement, "all grants granted or assigned by this agreement shall be irrevocable under all or any circumstances, and shall not be subject to rescission, termination or injunction." (See Docket No. 375-1 at 15 ¶ 13.)  However, the irrevocable assignment shall be "during the Term" of the Agreement.  The Agreement defines "Term" to mean "in perpetuity," subject to the termination provision of paragraph twelve (12) ("Paragraph 12"). (See Docket No. 375-1 at 5 ¶ 5.)  Paragraph 12 allows the parties to terminate the Agreement upon the occurrence of specific conditions. (See Docket No. 133-6 at 13-14.)

Therefore, the assignment to Bart of "all right, title and interest in and to the Mark" is irrevocable while the Agreement is valid. The court has previously acknowledged the Florida Court's determination that Mercado's assignment under the Agreement is subject to reversion upon termination.[2] Once the Agreement is validly terminated by Bart or Mercado, "the assignment of the trademark . . . revert[s] back to Mercado because the Term [ends]." (See Docket No. 133-23 at 16.) In the meantime, Bart owns the Mark. Ownership of the Mark reverts to Mercado only by the valid termination of the Agreement.

### 2.  Termination of the Agreement

Because the rights over the Mark revert to Mercado upon termination of the Agreement, the ownership issue ultimately turns on whether Mercado validly terminated the Agreement.

According to Paragraph 12, "Mercado shall have the right to terminate this Agreement immediately (A) in the event of a material breach by Bart which remains uncured for a period of ten days following written notice thereof." (See Docket No. 375-1 at 13 ¶ 12(a)(ii).) Furthermore,

> if Bart fails to make any of the above mentioned payments, in paragraph 6(c), within sixty (60) days from the due date, then Mercado shall have the option to declare this contract null and void and all payments already made on the part of Bart shall be retained by Mercado, provided Mercado gives Bart written notice at least fifteen (15) days prior to such date of termination and Bart fails to cure the non-payment within such time period or otherwise can justify its failure to make any such payments.

(See Docket No. 375-1 at 13-14 ¶ 12(a)(iii).)

Plaintiffs claim Mercado validly terminated the Agreement in April 2009 due to: (1) Defendants' failure to pay the amounts agreed upon in paragraph 6(c); and (2) Defendants' failure to comply with their contractual obligation set forth in paragraph 3(b) to request Mercado's consent for all uses of Mercado's name, image and likeness. (See Docket Nos. 383 at 10-21; 407 at 5.)

### a.  Compensation

---

[2] As the First Circuit explained, the doctrine of collateral estoppel applies to the issue of reversion because Mercado and Bart litigated the issue of reversion upon termination before the Florida Court, the Florida Court's determination was final at the summary judgment stage, and the issue was essential to the Florida Court's determination that Mercado's trademark claims were moot because Mercado had not terminated the Agreement. Mercado-Salinas, 2011 WL 6350535 at *21.

Case 3:09-cv-01509-GAG-BJM   Document 429   Filed 03/31/12   Page 12 of 19

**Civil No. 09-1509 (GAG)**                    12

Defendants argue any claim of termination by Mercado is meritless because Mercado ceased to perform any and all additional services as of November 2006, and thus, Mercado is not entitled to compensation under the Agreement. (See Docket No. 374 at 13-14.) They contend Bart was not obliged to fulfill its obligations under the Agreement until Mercado performed all of his obligations, and since Bart has not failed to comply with its obligations, Mercado could not terminate the Agreement." (See Docket No. 374 at 15.) According to Plaintiffs, Mercado's service obligation to Bart expired in June 2007, but Bart's payment obligations under the Agreement were subject to the Term, in other words, "in perpetuity." (See Docket No. 383 No. 12.)

As to the payment obligations under Paragraph 6(c), each party has a different interpretation. (See Docket No. 375-1 at 7 ¶ 6(c).) Both argue the best case scenario for themselves, while conveniently ignoring the express language of the compensation provision.

At this point it is worth taking a step back to discuss the two distinct provisions at play in this contract: Mercado's personal services and the assignment of the Mark. The first is the provision for personal services, which Mercado agreed to render during the Additional Services Period. The Additional Services Period is a ten year term, from the date of the Agreement, to be "automatically extended for additional two year periods at the option of Bart unless Bart notifies Mercado otherwise no less than thirty(30) days prior to the expiration of the then current Additional Services Period." (See Docket No. 375-1 at 6 ¶¶ 6(b)(i) & (ii).) The Florida Court found the Agreement was valid because it did not require Mercado to render his services "in perpetuity," but rather "[u]nder the explicit terms of the Agreement, Mercado's personal services obligations are owed for the duration of the Additional Services Period, not for the duration of the Term." (See Docket No. 133-23 at 7-8.) The court agrees with this analysis because under Puerto Rico law, Mercado cannot contract his personal services for life. See P.R. Laws Ann. tit. 31, § 4111 ("A hiring for life shall be void."). The other provision at issue is the assignment of the Mark. The Mark has been assigned to Bart in perpetuity, for the term of the contract. This much has previously been held by other courts.

It is also clear the terms of the contract state Bart must pay Mercado $25,000 per month for his personal services, the results thereof and for other grants. (See Docket No. 375-1 at 7 ¶ 6(c)) (compensation is "in consideration of all services rendered by Mercado and the use of the results

thereof and all rights granted by Mercado to Bart.") The court gives this provision the most obvious meaning: Mercado was being paid for his personal services and for the other grants in the Agreement. Among the rights granted to Bart through the Agreement was the assignment of the Mark. Therefore, part of the compensation set up in Paragraph 6(c) was for Mercado's personal services and part was for the assignment of the Mark.

Defendants' argument, that any compensation for the Mark would appear in the "NOW THEREFORE" paragraph of the preamble to the contract, is unbelievable. Considering the gravity of this contract, the amount of money given to Mercado for the use of his services, name and likeness, the court cannot believe Mercado sold the Mark, his actual name, for $10.00. The more likely interpretation is the court's interpretation that $25,000 per month was due to Mercado for use of the Mark and for his personal services. Mercado's argument is similarly disposed of because the specific terms of the compensation package include personal services.

The Additional Services Period did not end until 2007 and Mercado was under contract "to provide additional psychic and astrological services to Bart" during said period. If Mercado had rendered his services until the end of the Additional Services Period, he would be entitled to the full compensation set out in Paragraph 6(c). However, Mercado stopped rendering services to Bart in 2006, before his twelve year period concluded.[3] (See Docket No. 133-2 at 4 ¶ 34.)

Under Puerto Rico contract law, a contracting party must comply with its own contractual obligations before it can demand compliance from the other party. See P.R. Laws Ann. tit. 31, § 3052. In bilateral obligations, "a party may not seek enforcement of the other party's obligations unless he first compiles or agrees to comply with its own obligations." Mora Dev. Corp. v. Sandin,

---

[3] The Additional Services Period consists of a definite ten year period and additional two year periods at Bart's discretion. The Additional Services Period commenced with the Agreement in 1995. The ten year term concluded in 2005. The Additional Services Period automatically extended for two more years, as there is no evidence of notice by Bart to Mercado stating otherwise and Mercado continued to perform under the Agreement after 2005. Accordingly, the Additional Services Period would not have ended until 2007 and Mercado was under contract "to provide additional psychic and astrological services to Bart" during said period. Hence, Mercado's service obligation under the Agreement was for twelve years.

118 D.P.R. 733, 742 (1987), 18 P.R. Offic. Trans. 847, 857 (Apr. 29, 1987). "[I]f one of the parties does not fulfill his obligation, the other party may consider the contract dissolved without seeking court action." Constructora Bauza, Inc. v. Garcia Lopez, 129 D.P.R. 579, 594 (1991), 1991 P.R.-Eng. 735, 859. "This general principle governing mutual contracts . . . may be raised as a defense against a party who, having breached the contract, demands performance of the same." Id.

Because Mercado breached the contract, Mercado could not have validly terminated the contract. Additionally, Mercado stopped rendering services for Bart while under a contractual obligation to do so. Mercado cannot be forced to render services. See Garcia v. World Wide Entmt. Co., 132 D.P.R. 378, 385 (1992), 1992 P.R. -Eng. 754, 802 (Dec. 24, 1992) (holding specific performance of personal services cannot be compelled because it is "a very personal activity, closely linked to the debtor's liberty, . . . and thus performance of the obligation must be enforced in an action for damages.") Likewise, Bart cannot be forced to pay for services not rendered.

Because Mercado did not perform his obligation under the Agreement to provide additional services to Bart during the Additional Services Period, Bart need not comply with its payment obligations for Mercado's services. Mercado breached the Agreement by not performing the personal service provision. After Mercado breached the contract by not performing personal services, Bart was no longer under the obligation to pay Mercado for those personal services. As such, Mercado could not validly terminate the Agreement pursuant to its terms. Therefore, the Mark remained the property of Bart, until the term of the contract expires.

This dispenses of half of the compensation package owed to Mercado. Mercado is not wholly incorrect in believing he was owed monies under this provision of the contract. By its express language, Paragraph 6(c) provides compensation for Mercado's services, for the results of Mercado's services, and for all rights granted by Mercado. The Agreement does not provide distinct compensation for each, instead it lumps all three into one compensatory provision. The fact that Defendants have not made any payment to Mercado under the Agreement since November 2006 has been stipulated. (See Docket No. 133-2 at 4 ¶ 33.) Bart has not terminated the contract either as it has been using the Mark even though Mercado stopped performing personal services. Therefore the

contract is still on-going and valid, and Bart is also in breach. Bart need not pay for the personal services Mercado did not provide, but it must provide payment for the use of the Mark.

The court cannot discern from the Agreement what compensation is due to Mercado for the use of the Mark. Neither can the court decide whether Bart's obligation to compensate for the Mark stopped with the end of the Additional Services Period, or whether it continues during the Term of the Agreement. The court finds the Agreement to be ambiguous as to this point, and thus, must look to the parties intentions in order to interpret the contract. "The intent of contracting parties is 'generally . . . deemed a material issue of fact' precluding summary dismissal." Tropeano v. Dorman, 441 F.3d 69, 75 (1st Cir. 2006) (quoting Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 (1st Cir. 1992)). The evidence presented by both sides creates a genuine issue of material fact as to the intentions of the parties at the time the contract was signed regarding the period applicable to the compensation clause. It is the essence of a jury question and one that should be answered by a factfinder.

### b.    Breach of Contract

According to Paragraph 12, Mercado may terminate the Agreement immediately in the event of a material breach by Bart which remains uncured for a period of ten days following written notice thereof. (See Docket No. 375-1 at 13 ¶ 12(a)(ii).) In order for Mercado to validly terminate the Agreement pursuant to Paragraph 12(a)(ii), Bart must have materially breached the Agreement by not complying with its obligations under such, Mercado must have provided written notice of said breach, and Bart must have not cured the breach within ten days of the written notice.

Plaintiffs argue Bart breached its obligation under Paragraph 3(b) to request Mercado's consent for all uses of Mercado's name, image and likeness. (See Docket No. 407 at 5.) According to Paragraph 3(b), Mercado granted Bart:

> the right and license during the Term and throughout the Territory to use Mercado's performance, name, signature, photographs, voice, picture, likeness, or other indicia of his identity (collectively "Name and Likeness") in connection with the Preexisting Materials and the New Materials by any means and in any and all media now known or hereafter devised, subject, however, to Mercado's right to prior approve any such use, such approval not to be unreasonably withheld. If such approval is not communicated to Bart within forty-eight (48) hours of Mercado's receipt of the materials, such right of approval shall be deemed waived.

(See Docket No. 375-1 at 5 ¶ 3(b).)

This provision grants Bart the right to use Mercado's Name and Likeness with Mercado's prior approval, which Mercado cannot unreasonably withhold. Mercado loses his right to prior approve the use of his Name and Likeness if he does not communicate his approval within forty-eight hours of having received the materials. Paragraph 3(b) does not create an obligation for Bart to request Mercado's consent to use Mercado's Name and Likeness. Bart could not have breached an obligation it did not have. Accordingly, Mercado did not validly terminate the Agreement pursuant to Paragraph 12 (a)(ii).

Because Mercado did not validly terminate the Agreement pursuant to Paragraph 12, no rights reverted back to him. Bart maintains the ownership of the Mark. After the execution of the Agreement, and in the absence of a valid termination, Defendants are the only party entitled to claim trademark infringement.

### 2.    Trademark Infringement

Both registered and unregistered trademarks may be eligible for protection against infringing uses. Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 117 (1st Cir. 2006) (citations omitted). To succeed on a trademark infringement claim, a party seeking trademark protection must establish: (1) its mark is entitled to trademark protection; and (2) the allegedly infringing use is likely to cause consumer confusion. Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008) (citing Borinquen Biscuit, 443 F.3d at 116).

#### a.    Protectability of the Mark

The capability to function as a source-identifier of goods is what entitles a mark to trademark protection. Boston Duck Tours, 531 F.3d at 12 (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992)). Distinctiveness is typically classified along a continuum comprising of five categories based on their capacity to serve the source-identifying function: generic, descriptive, suggestive, arbitrary and fanciful. Boston Duck Tours, 531 F.3d at 12. Suggestive, arbitrary and fanciful marks are considered inherently distinctive, while a descriptive mark becomes distinctive –and thus eligible for trademark protection– only upon a showing of secondary meaning. Two

**Civil No. 09-1509 (GAG)**                                       17

Pesos, 505 U.S. at 769.  Personal names are generally considered descriptive terms.  Quicksilver, Inc. v. Kymsta Corp., 466 F.3d 749, 760 (9th Cir. 2006) (citations omitted).

Because descriptive marks marks are not inherently distinctive, the owner must provide "sufficient evidence to establish that the public associates the term or phrase not only with a specific feature or quality, but also with a single commercial source."  Boston Duck Tours, 531 F.3d at 13; see Boston Beer Co. Ltd. Partnership v. Slesar Bros. Brewing Co., Inc., 9 F.3d 175, 181 (1st Cir. 1993) ("[I]t is the party seeking protection of a mark who bears the burden of proving that secondary meaning has attached.").  "When a descriptive phrase becomes associated with a single commercial source, the phrase is said to have 'acquired distinctiveness' or 'secondary meaning,' and therefore functions as a trademark.  Boston Duck Tours, 531 F.3d at 13 (citing 15 U.S.C. § 1052(f)).  Thus, Defendants must demonstrate that the Mark "exhibits acquired distinctiveness gained through secondary meaning."  Boston Duck Tours, 531 F.3d at 13 (citing Borinquen Biscuit, 443 F.3d at 117) (internal quotation marks omitted).

A mark achieves secondary meaning when its primary significance to the public is to identify a particular source of a service, rather than simply the service itself.  Borinquen Biscuit, 443 F.3d at 116.  Plaintiffs do not dispute the Mark has acquired secondary meaning.  In fact, in addressing the parties' preliminary injunction requests, Judge McGiverin found in his report and recommendation that Plaintiffs –the original owners of the Mark– demonstrated the Mark had acquired secondary meaning prior to the Agreement.  (See Docket No. 194 at 19-21.)  More so, the Agreement itself states, "[t]he parties acknowledge that the [Mark] has been used and associated with the Preexisting Materials . . . [and] [a]s a result, the Mark has attained the status of a common law trademark and service mark."  (See Docket No. 375-1 at 3 ¶ 3(a).)  The evidence now before the court is not materially different than it was at the preliminary injunction stage.  Walter Mercado has worked as a psychic and astrologer for nearly forty years and is well-known in those roles in Puerto Rico, the United States, and Latin America.  (See Docket No. 133-2 ¶¶ 1-2.)  Mercado's reputation as a psychic and astrologer has only grown since the Agreement was signed.  Proof of secondary meaning entails vigorous evidentiary requirements."  Boston Beer, 9 F.3d at 181 (quoting Perini Corp. v. Perini Constr., 915 F.2d 121, 125 (4th Cir. 1990)) (internal quotation marks omitted).  The

record in this case is saturated with the psychic and astrological work produced and sold to the public under the name Walter Mercado. Accordingly, the court finds the Mark has acquired secondary meaning and is thus distinctive and entitled to trademark protection.

### b.   Likelihood of Consumer Confusion

Trademark infringement requires more than a theoretical possibility of confusion, but a substantial likelihood of "confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." Boston Duck Tours, 531 F.3d at 12 (internal quotation marks omitted). The First Circuit has interpreted "likely confusion" "to mean more than the theoretical possibility of confusion." Boston Duck Tours, 531 F.3d at 12 (citations omitted) (internal quotation marks omitted). Likelihood of confusion is assessed by examining the following factors: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the juxtaposition between the parties' advertising; (5) the classes of prospective purchases; (6) the evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of plaintiff's mark. Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1205 (1st Cir. 1983).

In the present case, the marks used are one and the same. There is no dispute that confusion among consumers would ensue if Mercado started developing and producing new work material relating to psychic and astrological services when he already assigned his name, Walter Mercado, to Defendants that produce these same services. Because Bart has exclusive ownership of the Mark, Mercado has been infringing the Mark, by continuing to use it and license it to third parties. Accordingly, the Court **GRANTS** Defendants' motion for partial summary judgment on claims of trademark infringement.

### B.   Plaintiffs' Motion for Partial Summary Judgment (Docket No. 383)

Plaintiffs' request for declaratory judgment is premised on Mercado being the rightful owner of the Mark. The court has already decided that: (1) Mercado assigned to Bart full rights to the Mark; (2) Mercado did not validly terminate the Agreement; and (3) Bart is the owner of the Mark for astrological and psychic services. Any use by Mercado of the Mark in relation to astrological

**Civil No. 09-1509 (GAG)**                    19

and psychic services would undermine that assignment.  Therefore, the Court **DENIES** Plaintiff's motion for partial summary judgment.

### IV.     Conclusion

For the foregoing reasons, the court **GRANTS** Defendants' motion for partial summary judgment at Docket No. 374.  Plaintiffs' motion for partial summary judgment at Docket No. 383 is **DENIED.**

**SO ORDERED.**

In San Juan, Puerto Rico this 31st day of March, 2012.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI

United States District Judge