IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WALTER MERCADO-SALINAS, et al.,

Plaintiffs,

v.

BART ENTERPRISES INTERNATIONAL, LTD., et al.,

Defendants.

Civil No. 09-1509 (GAG)

**OPINION and ORDER**

Walter Mercado-Salinas ("Mercado") and Astromundo, Inc. (collectively "Plaintiffs") brought this case in the Puerto Rico Court of First Instance against Bart Enterprises International, LTD. ("Bart"), Walter International Productions, Inc., Waltervision, Inc., Waltervision Productions, Inc. ("Waltervision Productions"), Walter Mercado Radio Productions, Inc., Walter Mercado Enterprises, Corp., Arcane Creative LLC ("Arcane") and Guillermo Bakula ("Bakula") (collectively "Defendants"). (See Docket Nos. 1 and 4.) Defendants removed this case to the federal district court. (See Docket No. 1.) The claims involved in this case are complex and have been thoroughly detailed in numerous opinions and orders by various federal courts prior to these motions *in limine*. Therefore, it is sufficient to state the main contention at this point is the determination of the trademark owner, whether any compensation is due for th rights of the Mark and whether the non-ownership parties have infringed upon the Mark.

The present matter involves three motions *in limine* submitted by Plaintiffs. The first seeks to exclude a number of Defendants' proposed exhibits due to *res judicata*, non-relevancy and hearsay. (See Docket No. 500.) Defendants opposed the motion at Docket No. 519. The second motion seeks to exclude the expert report and testimony of Leonard Cusano ("Cusano"). (See Docket No. 501.) Plaintiffs argue this testimony should be excluded because the testimony is irrelevant to the present suit and because Cusano's testimony does not qualify as expert testimony

**Civil No. 09-1509 (GAG)**                     2

as required by Rule 702 and Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597 (1993). (See Docket No. 501 at 4, 9.) Defendants opposed the motion at Docket No. 520. Finally, Plaintiffs seek to exclude six witnesses for the defense as well as certain topics from the testimony of Bill Bakula's ("Bakula") testimony. (See Docket No. 502.) Defendants opposed the motion at Docket No. 518. For the following reasons the court **GRANTS IN PART and DENIES IN PART** Plaintiffs' motion at Docket No. 500, the court **GRANTS** Plaintiffs' motion to exclude Cusano's testimony at Docket No. 501, and the court **GRANTS IN PART and DENIES IN PART** Plaintiffs' motion to exclude Defendants' witnesses at Docket No. 502.

**I.    Legal Standard**

The admission of expert testimony is governed by Federal Rule of Evidence 702. That rule provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702.

The trial court acts as a gate-keeper as the judge must ensure an expert's testimony is both relevant and is based on a reliable foundation. See Daubert, 509 U.S. 579 at 597 (1993); U.S. v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002).

The Daubert Court identified four factors that may assist the trial court in determining whether or not scientific expert testimony was reliable: "(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." Mooney, 315 F.3d at 62 (citing Daubert, 509 U.S. at 593–94). These factors were later held to apply to all expert testimony, not just scientific testimony. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). The factors are not a checklist for the trial judge to follow, but rather the inquiry is a flexible one, allowing the trial judge to determine and adapt these factors to fit the particular case at bar. See Kumho, 526 U.S. at 150; Milward v.

**Civil No. 09-1509 (GAG)**                                3

Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 15-16 (1st Cir. 2011). "Proponents . . . do not have to demonstrate that the assessments of their experts are correct, only that their opinions are reliable." Rivera-Cruz v. Latimer, Biaggi, Rachid & Godreau, LLP, 2008 WL 2446331 at *2 (D.P.R. June 16, 2008) (citing Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)). While the general focus of this inquiry is the principles and methodology relied upon by the expert, the court may consider the congruity of the data and the opinion proffered by the expert. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (holding a court may conclude there is too great an analytical gap between data and the opinion proffered); Ruiz–Troche, 161 F.3d at 81.

**II.    Legal Analysis**

All three motions seek to exclude evidence based on res judicata. Therefore, a brief discussion regarding claim preclusion principles is warranted before discussing the details of each motion.

**A.    Claim Preclusion (Res Judicata)**

"The doctrine of res judicata dictates that 'a final judgment on the merits of an action precludes the parties from relitigating claims that were or could have been raised in the prior action.'" Haag v. Shulman, 683 F.3d 26, 30 (1st Cir. 2012) (quoting Haag v. U.S., 589 F.3d 43, 45 (1st Cir. 2009)). Under federal law, claim preclusion applies when three requirements are present: "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits." Kale v. Combined Ins. Co. of America, 924 F.2d 1161, 1165 (1st Cir. 1991). Pertinent to the second prong, the First Circuit has held, "'[a] single cause of action can manifest itself in an outpouring of different claims, based variously on federal statutes, state statutes, and the common law . . . . [A]s long as the new complaint grows out of the same transaction or series of connected transactions as the old complaint, the causes of action are considered to be identical for res judicata purposes.'" Havercombe v. Department of Educ. of Com. of P.R., 250 F.3d 1, 3-4 (1st Cir. 2001) (quoting Kale, 924 F.2d at 1166. In other words, the identity requirement is met so long as the two claims have the same nucleus of operative facts, even if the exact issue was not previously litigated. See Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 7 (1st Cir. 1992) (citing Kale, 924 F.2d at 1166).

**B.     Bart's Trademark Infringement Claim Against Plaintiffs**

Plaintiffs seek exclusion of various pieces of Defendants' proposed evidence due to *res judicata* in all three of their motions *in limine*. The thrust of all these arguments is that Bart and Defendants are barred from now asserting any claims and damages that could have been brought with the Florida litigation. (See Docket Nos. 500 at 11, 501 at 4, & 502 at 5.) The court has been clear from the beginning that *res judicata* will bar any attempt by either party to re-litigate issues that were, or could have been brought in front of the Florida court. (See Docket Nos. 220 at 9 ("As the same parties appear in both cases, the prior decision precludes any arguments that repeat issues that were previously decided."); 451 at 2 ("Moreover, the court highlights that the reversion issue has already been determined by the Florida Court."). Therefore, it should have been clear to all parties that claim preclusion would apply to the current litigation.

To this end, the court must rule whether Defendants may now seek damages due to any trademark infringement committed by Plaintiffs prior to 2009. The court finds claim preclusion bars Defendants from seeking such damages. Defendants, Bart as well as the various corporations licensed to use the Mark, brought an action in Florida alleging breach of contract due to Mercado's attempted termination of the contract in November of 2006. That case ended with a jury not awarding Bart and its affiliates any damages due to Mercado's actions. The jury also held that Bart was the rightfully owner of the Mark. Any damages suffered by Defendants due to Plaintiffs infringing use of the Mark could have, and should have, been brought during the Florida litigation. It is uncontested the parties in the Florida litigation and this litigation are the same. It is also uncontested that there is a final judgment on the merits in that case. Therefore, the only prong of the claim preclusion analysis the court need address is the identity of the cause of action.

The causes of action between the Florida litigation and the current litigation satisfy the identity prong because they share the same nucleus of operative facts. After Mercado attempted to terminate the agreement in 2006, Defendants brought suit for damages. Any damages due to trademark infringement by Plaintiffs could have been asserted in that litigation. Defendants rightly point out to the court that the Florida litigation was not an action for trademark infringement. (See Docket No. 520 at 3.) The Florida court mooted Plaintiffs' trademark infringement claim because

the jury found Defendants to be the rightful owner of the Mark.[1]  In other words, the Florida litigation was not a trademark infringement case because Defendants chose not to assert a trademark infringement claim.  Plaintiffs were the ones to assert a claim for trademark infringement and when the jury found Defendants to be the owner of the Mark, the court mooted the claim.  There were no roadblocks for Defendants alleging a claim of trademark infringement in the Florida litigation.  As such, the claim could have been brought at that time.  Therefore, Defendants cannot now assert a claim for damages due to Plaintiffs actions pertinent to Mercado's 2006 breach of contract.

Finally, this ruling should not be construed to quash any and all evidence of damages due to trademark infringement.  The ruling only excludes evidence of damages between 2006 and 2009.  When Mercado attempted to terminate the contract for a second time in 2009, the operative facts of the present litigation, Defendants may have sustained damages.  Those facts and the possible damages subsequent to those events are the substance of this litigation.  Defendants may bring evidence of damages sustained subsequent to 2009 as these claims involve a separate and distinct set of operative facts.  Claim preclusion does not bar such testimony.  Therefore, for the purposes of the current motions *in limine* and upcoming trial, any evidence proffered for the use of demonstrating trademark infringement stemming from Mercado's failed termination attempt of 2006, or damages thereof, shall be excluded.  With this ruling in mind, the court analyzes the three motions *in limine* presently before the court.

---

[1] The Florida court specifically stated:
> However, the trademark infringement was never tried.  Once the jury found that Mercado, not Bart had breached the contract and that Mercado had not properly terminated the contract, the claim for trademark infringement became moot because, as stated in the order on motions for summary judgment, the trademark rights revert back to Mercado [only] upon a valid termination of the agreement.  Because the jury found that there was no valid termination, no event had occurred that would cause the trademark rights to revert to Mercado.  Thus, the claim for tm infringement was moot and impliedly dismissed.  (D.E. #439).

(Docket No. 520 at 3.)

**Civil No. 09-1509 (GAG)**                                    6

     **C.**     **Motion *in limine* at Docket No. 500**

          **1.**     **Defendants' Exhibit Nos. 1-13; 58-63; 164-165[2]**

Plaintiffs first seek to exclude twenty exhibits of Defendants arguing the documents are irrelevant. The documents consist of trademark applications, registrations and communications between the parties. (See Docket No. 500 at 5.) Defendants proffer these documents to demonstrate Mercado's intent to irrevocably assign the Mark to Defendants at the time of the agreement. (See Docket No. 519 at 3.) The intent of the parties is the essential question of this litigation; however, the court cannot agree that these documents prove what the parties intended when signing the Agreement back in 1995. A specific condition of the Agreement assigns the Mark to Defendants and allow them to register the Mark in their name. (See Docket No. 378-1 at 4 ("Bart shall have all rights in the Mark which are afforded to owners of trademarks and service marks, including but not limited tot he right to seek and obtain trademark protection and/or registration of the Mark in its name . . . .")). The current registration holder of the Mark is not in question. It is stipulated by the parties that pursuant to the terms of the Agreement, Bart registered the Mark throughout various parts of the world. These documents are not necessary to prove that Bart registered the Mark, nor will these documents assist the jury in determining the intention of the parties when the Agreement was signed in 1995. Bart's actions pursuant to the express terms of the Agreement do not shed light as to what compensation the parties intended for the Mark. Therefore, these documents are irrelevant to the present litigation. Plaintiff's motion *in limine* to exclude these documents is **GRANTED**.

          **2.**     **Defendants' Exhibits Nos. 14-16; 48-57; 72; 77; 181-183**

               **a.**     **Exhibit Nos. 14-16; 54-57; 72; 77**

---

[2] To simplify the evidentiary record for the court and the parties, all references to Defendants' exhibits refers to the 193 exhibits which are listed at Docket No. 480. Plaintiffs only seek to exclude evidence contained within that list. As such, the court will refer directly to the exhibit number, rather than the entire docket number. For example, Plaintiffs seek to exclude the first exhibit contained on Defendants' exhibit list in this motion. The court shall refer to this as "Exhibit No. 1" as opposed to "Docket No. 480 at 104; No. 1."

These documents consist of communications between counsel for all parties. Defendants claim these letters will assist the jury in assessing damages because they demonstrate Plaintiffs' violations of the Mark and Defendants' responses. These letters read like answers to law school exams. The contents of the letters clearly communicate each party's theory of why Plaintiffs' actions are in violation of the Mark or not. The jury must decide this case on the facts, not on legal memoranda and theory. The only fact these letters prove is that Defendants believe Plaintiffs infringed on the Mark. The rest of the contents are so saturated with the legal implications and rules that they would not be beneficial to the jury. The court agrees with Plaintiffs that these letters will not assist the jury and are therefore not relevant to the present matter. Any relevance the letter may contain would be far outmatched by the confusion to the jury who is not being asked to interpret the legal implications of the Florida litigation, but rather is being asked to discern who currently owns the Mark, and what if any damages have been inflicted to the owner since 2009. Therefore, the court **GRANTS** Plaintiffs' motion at Docket No. 500 as to these documents.

**b.      Exhibit Nos. 48-53**

These pieces of evidence are letters sent by Defendants to Mercado requesting his personal services in early 2009. These letters shall be excluded as it has been conclusively established that Mercado was under no obligation to provide personal services to Defendants after 2007. This was a major contention in the Florida litigation and this court has previously discussed the preclusive effects of the Florida judgment. Defendant was under no obligation to render personal services at the time the letters were sent. Therefore, the court **GRANTS** Plaintiffs' motion to exclude these documents.

**c.      Exhibit Nos. 181-183**

Little discussion is warranted regarding these three documents. All three are contracts between Mercado and Jamie Shoop & Associates, Inc., led by Bakula. These contracts represent work previously performed by Mercado. This agreement is completely irrelevant and not in controversy at the present time. Defendants argument that these documents somehow shed light as to the 1995 Agreement between Mercado and Bart, also led by Bakula, is unpersuasive. The 1995

**Civil No. 09-1509 (GAG)**                                8

Agreement is at issue in this case. The contracts previously signed by the parties will not enhance the jury's ability to discern the intention of the parties for the 1995 Agreement. There are very little similarities between the Shoop agreement and the 1995 Agreement. As such, the court **GRANTS** Plaintiffs' motion to exclude these documents.

        **3.**        **Defendants Exhibit Nos. 17-28; 34-47; 64-71; 73-76; 81; 116-119; 125-131; 156-163; 168-179; 184-192**

Plaintiffs primary contention for excluding these documents is that Defendants used these documents in the Florida litigation and, therefore, they are not relevant to the present litigation.

        **a.**        **Exhibit Nos. 17-19; 20-28; 34-46; 76; 81; 129-131; 156-163; 171-173; 175-177; 184-192**

The court must state that when a piece of evidence is used in a prior trial, that does not necessarily mean the evidence cannot be used in a subsequent trial. The scope and nature of the trials dictate whether there are any preclusive effects regarding the evidence. The court explained at length what preclusive effect the Florida litigation has on the current litigation. The court shall not exclude evidence simply because has been previously used in the Florida litigation; however, documents shall be excluded that are used as a means to demonstrate pre-2009 non-performance or damages. While there is a trademark infringement claim in the present case, no evidence of pre-2009 infringement shall be allowed. For these reasons, the court **GRANTS** Plaintiffs motion *in limine* to exclude the following Exhibit Nos. 17-19; 20-28; 34-46; 76; 81; 129-131; 156-162; 171-173; 175-177; 184-192. The court **DENIES** Plaintiffs' motion as it pertains to Defendants' Exhibit No. 163 as this letters is dated February 24, 2010.[3]

        **b.**        **Exhibit Nos. 64-71**

These documents represent filings and orders from the Florida litigation. Defendants do not address why these documents are included among their exhibits for this case. The court can think of no argument as to why these documents will assist the jury. Therefore, exclusion is warranted.

---

    [3] The court notes only a Spanish language version of the document has been submitted and a translation must be used by Defendants for trial.

**Civil No. 09-1509 (GAG)**                                     9

The court **GRANTS** Plaintiffs' motion to exclude Exhibit Nos. 64-71.

        **c.**        **Exhibit Nos. 73-75**

Plaintiffs argue these communications should be excluded pursuant to the same claim preclusion argument previously discussed. The court agrees and **GRANTS** exclusion for Exhibit Nos. 73 and 74. However, the court **DENIES** Plaintiffs' motion to exclude Exhibit No. 75. This message is dated October 13, 2009, well after the Florida litigation ended and Mercado attempted to terminate the contract for a second time. This evidence is relevant as it goes to Mercado's activity post 2009, the time frame under consideration by the court.

        **d.**        **Exhibits 116-119; 125-128; 168-170; 174; 178-179**

The court is unable to completely rule on the admissibility of these documents because copies have not been provided to the court of Exhibit Nos. 116-119. The courtesy copy of Defendants' exhibits provided to the court by Plaintiffs seems to have mistakenly omitted these documents. However, judging from the description of said exhibits provided by Defendants, it seems parts of the omitted documents would be excluded as they deal with monthly settlement prior to 2009, going back as far as 2005. However, without being able to examine the actual documents, the court cannot rule in Plaintiffs favor. Therefore, the court **DENIES without prejudice** Plaintiffs' motion to exclude Exhibit Nos. 116-119. Plaintiffs shall submit these exhibits on or before December 27, 2012, unless the case is settled. Any response to Plaintiffs submission is due by December 28, 2012. These deadlines are final.

As for the rest of the documents, the court has examined the documents and finds they all refer to time periods covered in the Florida litigation and, thus, not relevant to the present suit. Therefore, the court **GRANTS** Plaintiffs' motion to exclude Exhibit Nos. 125-128, 168-170, 174, 178-179.

        **4.**        **Defendants Exhibits Nos. 29-35; 184-192**

Plaintiffs' objection to these documents rests on hearsay grounds. Pointing out that most of these documents are copies of magazine and newspaper articles, Plaintiffs argue any use by Defendants to prove the matter asserted in the articles would be hearsay and inadmissible at trial.

**Civil No. 09-1509 (GAG)**                              10

Defendants do not address this argument by Plaintiffs in their brief. The court agrees with Plaintiffs that using these materials in order to prove a matter asserted within the article would be hearsay. In looking at the content of the articles, it seems apparent the intended use is for demonstrating the truth of events contained in the article. Given Defendants silence on this issue, it seems this is the intended use. Additionally, many of these documents have been excluded for other reasons contained within this opinion and order. Therefore, the court **GRANTS** Plaintiffs' motion to exclude these documents, Exhibit Nos. 29-35; 184-192.

           **5.     Defendants Exhibits Nos. 78-80; 82-86; 93; 106; 111; 113**

Pertaining to exhibits 78-80, Plaintiffs' seek exclusion of these agreements that have been redacted because Defendants have yet to produce unredacted copies. This issue is presently before Magistrate Judge McGiverin who will determine whether sanctions are appropriate for this conduct. (See Docket No. 487.) As such, the court will not issue a ruling pertaining to exhibits 78-80 at this time and may revisit the issue once Judge McGiverin has issued his ruling.

As for the remaining documents, the court finds them to be unfairly prejudicial. Plaintiffs argue the doctrine of completeness requires the exclusion, but the doctrine of completeness only allows one party to introduce an unredacted copy of evidence after opposing counsel has introduced a redacted copy. In this case, there are no unredacted copies. Therefore, allowing Defendants to use redacted copies, without allowing Plaintiffs to argue rates or totals to the jury would be unfairly prejudicial to Plaintiffs. Therefore, the court **GRANTS** exclusion based on Federal Rule of Evidence 403.

For the reasons stated above, the court **GRANTS IN PART and DENIES IN PART** Plaintiffs' motion *in limine* to exclude Defendants' documentary evidence at Docket No. 500. The court **GRANTS** the motion for Exhibit Nos. 1-46; 48-74; 76-77; 81-86; 93; 106; 111; 113; 125-131; 156-162; 164-165; 168-179; 181-192. The court **DENIES** Plaintiffs' motion to exclude Exhibit Nos. 75; 78-80; 116-119; 163.

    **D.     Motion *in limine* at Docket No. 501**

Plaintiffs initial argument is that Cusano's testimony is barred by *res judicata* because all the testimony is derived from Mercado's breach of contract that was the subject of the Florida litigation. (See Docket No. 501 at 4-9.)  Defendants contend Cusano's testimony is relevant to the damages Defendants suffered due to Plaintiffs' infringement on the Mark. (See Docket No. 520 at 3.)  As a secondary argument Plaintiffs contend that Cusano's report is unreliable due to its methodology. Defendants counter that the testimony should go to the jury who is free to place as much or little weight on Cusano's testimony as it deems proper.

### 1.   Claim Preclusion Applies to Cusano's Report

At this point there can be no doubt that the jury in the Florida litigation found Mercado breached the contract for personal services and that Defendants did not sustain any damages. See Walter International Productions v. Mercado Salinas, 650 F.3d 1402, 1406 (11th Cir. 2011). At the beginning of this opinion and order the court analyzed the types of evidence *res judicata* would prevent in this case. Certainly, if the jury decides Mercado did not validly terminate the contract, then the Mark remains the property of Defendants. Defendants can seek damages due to Plaintiffs' infringement of the mark subsequent to the 2009 termination letter sent by Mercado because that claim was not decided by jury in the Florida litigation.

Defendants are correct when they claim Cusado testimony focuses on the damages due to trademark infringement, rather than Mercado's breach of contract in 2006. The problem before the court is the manner in which the report has been drafted and written. Plaintiffs point to Cusano's deposition in which he clearly states he calculated damages based on the time of Mercado's first attempt to terminate the contract in 2006. (See Docket No. 501 at 4.)  Also, Cusano seemed completely unaware of Mercado's second attempt to terminate the contract in 2009. (See id. at 5.) These excerpts, taken together, along with Defendants' claim that trademark infringement damages are relevant to this action as far back as 2006 and a review of the report itself, demonstrate the report is premised on the assumption that damages may be sought from the 2006 termination attempt by

Mercado. That is incorrect. Parts of the report may be relevant and it is possible Cusado's figures could be re-calculated to represent the relevant time frame, but the court cannot find a bright line to do this with the report. In its present state, the report cannot be used and Cusado cannot testify as to the findings of the report. Simply put, the basis for the report is inaccurate and the court cannot allow misleading testimony to be given to the jury. For this reason, the court **GRANTS** Plaintiffs' motion to exclude the testimony of Cusado and his report at Docket No. 501.

### 2.   Whether Cusado's Testimony Meets the <u>Daubert</u> Standard

As an alternative, Plaintiffs seek to exclude Cusado's testimony because it is not reliable. (See Docket No. 501 at 9.) It is unnecessary for the court to analyze this testimony under the <u>Daubert</u> standard because the court has excluded the testimony on alternative grounds. However, it is worth noting that parts of the report seem very unscientific. Cusado states he simply assumed all increases in Plaintiffs' income were directly due to their infringing activity. (See Docket No. 501 at 11.) Without any evidence or figures to rely upon, this assumption is made regarding Plaintiffs' income. The court must act as a gate-keeper when it comes to expert testimony. This analysis by Cusado, while draped as expert, seems extremely superficial. Similarly, the court notes Cusado again shunned hard numbers when he assumed Mercado enjoyed a 9% increase of income for 2009 and 2010. (See Docket No. 501-3 at 14.) Cusado may not have had the relevant information necessary to make his calculations and Cusado may have done the best with the limited information available, but the court cannot allow assumptions and guesses to form the basis of expert testimony to then be delivered to the jury. As such, even if the report was not excluded for other reasons, the court would be inclined to exclude this testimony pursuant to Federal Rule of Evidence 702.

### E.   Motion *in limine* at Docket No. 502

Plaintiffs' final motion *in limine* seeks to exclude various witnesses and testimony due to claim preclusion, as well as failure to properly disclose the identity and specific testimony to be proffered. (See Docket No. 502.)

### 1.   Testimony of Bill Bakula

There is no reason to beat a dead horse. Plaintiffs' seek to limit Bakula's testimony to the

present claims. The court agrees. Plaintiffs' do not seek to exclude all of Bakula's testimony and Bakula will be allowed to testify as to relevant matters. If matters not relevant are introduced at trial, the court shall be vigilant and sustain any timely objection. The court is convinced Plaintiffs' counsel will be on the look-out and timely raise any warranted objection. As such, the court **DENIES** Plaintiffs' motion at this time and, if necessary, shall address any such issues during the course of trial.

### 2. Testimony of Marisela Carvajal

Plaintiffs' motion as to Carvajal is **DENIED**. Carvajal's testimony is relevant as to payments to Plaintiffs' for use of the Mark. Defendants state no payments were made to Plaintiffs' for use of the Mark at any time, either pre-2006 or post-2006. Their case relies on their interpretation that no monies were ever paid to Plaintiffs for use of the Mark. Carvajal, as bookkeeper for Defendants, has information pertaining to the payments to Plaintiffs'. While Carvajal's testimony shall be monitored in the same fashion as Bakula's, her testimony shall not be excluded prior to trial.

### 3. Daisy Villegas and Arya Towifghi

These witnesses are offered to demonstrate trademark infringement by Plaintiffs. (See Docket No. 518 at 3.) Villegas would testify as to the contract between Plaintiffs and Lanman & Kemp-Barclay. This agreement was dated September 6, 2007, clearly before the relevant time frame for this action. Therefore, the court **GRANTS** Plaintiff's motion as to Villegas.

As for Towifghi, the same holds true. The court does not have a specific date for the contract central to her testimony, but the contract was finalized and part of the Florida litigation, meaning it must have been signed no later than late 2008. As such, the preclusion effects of *res judicata* will not allow such re-litigation of issues that could have been brought previously. The court **GRANTS** Plaintiffs' motion as to Towifghi.

### 4. Testimony of Harper Collins Publishing, Hernan Gonzalez and Miguel Angel Carpio

Plaintiffs' seek exclusion of these witnesses due to the non-identification of whom from

**Civil No. 09-1509 (GAG)**                14

Harper Collins is expected to testify and the non-disclosure of Gonzalez and Angel Carpio. (See Docket No. 502 at 10-11.) Defendants do not argue these assertions. As the motion is uncontested for these witnesses, the court **GRANTS** Plaintiffs' motion to exclude. Witnesses must be identified prior to trial and announced to opposing counsel. See FED. R. CIV. P. 26(a) & 37(c).

For these reasons the court **GRANTS IN PART and DENIES IN PART** Plaintiffs' motion *in limine* at Docket No. 502.

### III. Conclusion

For the foregoing reasons the court **GRANTS IN PART and DENIES IN PART** Plaintiffs' motion at Docket No. 500, the court **GRANTS** Plaintiffs' motion to exclude Cusano's testimony at Docket No. 501, and the court **GRANTS IN PART and DENIES IN PART** Plaintiffs' motion to exclude Defendants' witnesses at Docket No. 502.

**SO ORDERED**.

In San Juan, Puerto Rico this 24th day of December, 2012.

*S/ Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge